# MERRIMACK,

## DECEMBER TERM, A. D. 1851.

### WALLACE *v.* WALLACE.

A legacy is specific, when it is the intention of the testator that the legatee should have the very thing bequeathed to him, and *not merely a correspond-ing amount, in value;* and it is not liable to abatement for payment of debts, unless the assets are inusfficient for that purpose.

A testator bequeathed to his wife "five hundred dollars, in personal property, such as she may select; also the pew in the congregational meeting-house." *Held,* that the bequests were specific.

If a legacy be given generally, with a demonstration of a particular fund as the source or means of payment, it will be a demonstrative legacy.

Every gift of land is considered specific.

A testator devised to his wife, during her life, the use and income of the land and buildings where he lived, and of a certain part of the Davis farm, so called. *Held,* that the devise was specific.

A testator is not to be supposed ignorant of the condition of his proprty, unless it appear from the the will that he is so.

A testator is to be considered as intending a benefit to the object of his gift.

A testator, after sundry bequests, devised one-half the residue of his estate to his sister. He then devised one-half the remainder to a nephew and niece, and all the rest of his property, after paying his debts and legacies, he devis-ed to the heirs of a brother. If the debts and legacies had been charged up-on the last share, nothing would have been left for the devisees. *Held,* that they were to be charged upon all the property included in the residuary de-vises.

APPEAL from a decree of the court of probate for this county.

Robert M. Wallace, of Henniker, on the second day of Octo-ber, A. D. 1846, made his will, by which he gave to his wife fifteen hundred dollars, payable in three years after his decease; five hundred dollars in personal property, such as she might se-

lect, the pew in the congregational meeting-house, and the use and income of the land and buildings where he lived, during her life ; and also of a part of the Davis farm, so called.   He gave to his nephew, Jonas Wallace, and his niece, Susan B. Patterson, the sum of one hundred dollars each, and to Susan Chapin the sum of fifty dollars, which legacies were to be paid in one year after his decease.   The testator then devised as follows :

" I do further give and bequeath to my sister, Mary Patterson, wife of Peter Patterson, her heirs and assigns, one undivided half of all the rest, residue and remainder of my property, whether personal or real, to have and to hold the same to her, the said Mary Patterson, her heirs and assigns, forever.

" I do also give and bequeath to my nephew, Robert Wallace, and to my niece, Susan Darling, wife of Jonathan P. Darling, their heirs and assigns, one half of the remainder of my estate, whether personal or real, to have and to hold the same to them- the said Robert Wallace and Susan Darling, their heirs and as, signs, forever ; the said Robert Wallace is to have two dollars as often as the said Susan Darling shall have one dollar.

" All the rest, residue and remainder of my property, after paying my debts and legacies, I do give and bequeath to Albert, Robert, Thomas, William and Susan Wallace, heirs of Thomas Wallace, deceased, to be equally divided between them.

" And I do hereby constitute and appoint Robert Wallace my sole executor of this my last will and testament."

The will was proved on the fourth Tuesday of October, 1846, and at a court of probate held on the fourth Tuesday of June, 1850, the following decree was made :

" Notice having been given that a hearing would be had on the annexed petition, at this time and place, and now the said executor appearing, exhibits a copy of the will of said testator, which is hereto annexed, and it appearing by said will that the testator intended to make distribution of his estate therein specified, between his sister, Mary Patterson, his nephew Robert Wallace, and his niece Susan Darling, before payment of debts ; and, whereas, after paying certain specified legacies, and making a distribution according to said will, of the residue of the es-

tate among the above named legatees, there would not have remained sufficient estate to pay the debts, whereby it became necessary, by law, to pay the debts, before making a distribution of the residue of the estate among said legatees, and thereby their interest in said estate, as intended by and expressed in the will, of the said testator, became greatly affected and materially diminished:

" Therefore, upon a fair construction of said will, and giving to it the operation and effect intended by the testator, it is decreed that the whole balance found in the said executor's hands, according to the account hereunto annexed, being the sum of one hundred seventy-five dollars, together with the sum of one hundred dollars advanced to said Mary Patterson, as part of her share in said balance, making the sum of two hundred seventy-five dollars and eight cents, as the balance to be distributed according to said will, belongs to and should be paid to the said Mary Patterson, Robert Wallace and Susan Darling, in the proportion specified in said will:

" It is therefore ordered, that the said executor pay to the said Mary Patterson (the one hundred dollars already received, to be reckoned as part of the same,) the sum of one hundred eighty-three dollars, thirty-eight cents, . . . . . . . . . . . $183.38
To Susan Darling, thirty dollars fifty-seven cents, . . . .    30.57
And retain to his own use sixty-one dollars thirteen cents., 61.13

---

$275.08"

From this decree, Albert and Robert Wallace appealed, and filed, as the reasons of the appeal, the following :

" Because, that by the said order and decree, the said executor was ordered to pay the whole balance found in his hands, being two hundred seventy-five dollars and eight cents: to Mary Patterson the sum of one hundred eighty-three dollars and thirty-eight cents, to Susan Darling thirty dollars and fifty-seven cents, and retain to his own use sixty-one dollars and thirteen cents. Whereas, the said order and decree should have been, that the said executor pay to Mary Patterson the sum of one hundred thirty-seven dollars and fifty-four cents, being the one half of said sum

of two hundred and seventy-five dollars and eight cents, and to Susan Darling twenty-two dollars and ninety-two cents, and retain to his own use, forty-five dollars and eighty-four cents, and that the balance remaining in the hands of the said executor, after paying the several sums last above named, being sixty-eight dollars and seventy-seven cents, should have been decreed to be paid to said Albert and Robert Wallace, and Thomas, William and Susan Wallace, heirs of Thomas Wallace, deceased, equally between them as the residuary legatees, as specified in the will; the said Albert and Robert Wallace claim to have allowed them, each the sum of thirteen dollars and seventy-five cents, as their distributive share of said sum of sixty-eight dollars and seventy-seven cents.

*Bowman*, for the appellants.

*Smith*, for the executor.

GILCHRIST, C. J.   The question, in this case, is whether, upon a proper construction of the will, the debts and legacies are to be paid out of the property devised to the five heirs of Thomas Wallace, of whom the appellants are two, or whether they are chargeable upon all the property devised by the residuary clauses.

The testator first makes a provision for his wife, and then bequeaths certain pecuniary legacies to three of his relations.  He then gives to Mrs. Patterson, one-half the residue of his property, real and personal.  The other half was then to be disposed of, and one-half of this, or one-fourth of the whole residue, he gives to Robert Wallace and Mrs. Darling, in the distribution of which Robert Wallace is to have two-thirds and Mrs. Darling is to have one-third.   All the residue of his property, being one-fourth part of the whole residue first named, after paying debts and legacies, he gives to the five heirs of Thomas Wallace.   It was the opinion of the court of probate that the testator intended to distribute the gross residue of his estate between Mrs. Patterson, Robert Wallace and Mrs. Darling, before the pay-

ment of his debts, the consequence of which would be that the payment of the debts must be thrown exclusively upon the share given to the appellants, and the other co-heirs of Thomas Wallace.

The question is not raised, by the parties, whether the legacies of money are mere pecuniary legacies, and, as such, bound to contribute to the burdens of the estate, if the words relating to the payment of the debts can be applied to them; or whether they are specific bequests, and not to abate until the other devises and legacies have been exhausted. But the court is inclined not to construe a legacy as specific, unless clearly so intended. *Kirby* v. *Potter*, 4 Ves., 752; *Innes* v. *Johnson*, 4 Ves., 568; *Webster* v. *Hale*, 8 Ves., 413. And these legacies are not specific, but common pecuniary legacies. *Lupton* v. *Lupton*, 2 Johns., Ch. 622; *Wilson* v. *Brownsmith*, 9 Ves., 180; *Lambert* v. *Lambert*, 11 Ves., 607. But from this remark must be excepted the legacy of "five hundred dollars in personal property such as she may select," and that of "the pew in the congregational meeting-house." By our law the executor, except where he is the residuary legatee, is bound to return an inventory of the personal property, the value of which is estimated by appraisers. The personal property does not, as in England, go to the executor, but, if undisposed of by the will, descends to the heir at law. As the personal property is all inventoried, and belongs to the estate, after the death of the testator, a reference to it, in connection with a legacy, would seem to make the legacy more specific than it might be considered by the use of the same words in England. Many of the English cases, therefore, relating to the distinction between specific and demonstrative legacies, are not so applicable here as they would be, were there not not this difference in our laws. It is not stated, in the case, that the testator left personal property to the amount of five hundred dollars, or a pew in the congregational meeting-house, but there is no reason to doubt the fact, any more than that he died seized of certain real estate described in the will.

The distinction between these two kinds of legacies is often very nice. *White* v. *Winchester*, 6 Pick., 54; and the cases

upon the point are quite numerous. It will not, however, be necessary to examine many of them at present. (A legacy is specific, when it is the intention of the testator that the legatee should have the very thing bequeathed, and not merely a corresponding amount in value. Such a legacy is not liable to abatement for the payment of debts, unless the assets are insufficient for that purpose. But if a legacy be given generally, with a demonstration of a particular fund, as the source or means of payment, it will be a demonstrative legacy.) *Walton* v. *Walton,* 7 Johns., Ch. 258.

In the case of *Kirby* v. *Potter,* 4 Ves., 748, the testator bequeathed a legacy " out of my reduced bank annuities," and the legacy was held not to be specific. But Lord *Alvanly* said, " if this legacy had been expressed thus, ' in my reduced bank annuities,' I could not have considered that the testator meant anything but an identical part of that *corpus.*"

In *Richards* v. *Richards,* 9 Price, 219, the testator bequeathed to his eldest son " such part of my stock of horses which he shall select, to be fairly valued and appraised to the amount of £800," and the legacy was held to be specific. This case is much in point, and is consistent with the meaning of the present testator, which we think was, that his wife should select articles of personal property from the inventory, according to the appraisal, to the amount of five hundred dollars; a construction which, we think, is borne out by the authorities.

The devise of the lands to the wife for her life was also specific. (Every gift of land, even as a general residuary devise, is specific.) *Wyman* v. *Brigden,* 4 Mass. Rep., 154 ; 7 Vesey, 147, 399 ; *Broome* v. *Monck,* 10 Vesey, 605 ; *Milne* v. *Slater,* 8 Vesey, 305 ; *Nannock* v. *Horton,* 7 Vesey, 399.

The question is not whether some portion of the real estate included in the residuary devises of the will, that is, the devise to the appellants, is not chargeable with the payment of the debts, but whether all the estate, included in all the residuary clauses, is not equally charged, and whether the whole of the residue does not constitute a fund for such payment. By the last clause in the will, the testator devises all the residue of his

property "after paying my debts and legacies," to the appellants. Where land is devised *after payment of debts and legacies*, it is held to be charged with them. *Williams* v. *Chitty*, 3 Ves., 545; *Lupton* v. *Lupton*, 2 Johns., Ch. 624; *Brudenell* v. *Boughton*, 2 Atk., 268. [As between specific and general legatees, where the personal property is not sufficient to pay the debts and the specific legacy, the general legatees must lose their legacies.] *Humes* v. *Wood*, 8 Pick., 478.

We think, however, that the intention of the testator, which, where the rights of creditors do not intervene, must be the guide of the court, is sufficiently clear that the pecuniary legacies, and all the legacies preceding the residuary devises, were to be exempted from the burden of the debts. In this respect, the case is similar to that of *Lee, appellant*, 18 Pick., 285. In that case, the testator bequeathed his personal estate, not by a residuary clause, but as an absolute bequest, and devised property in trust to his executors, and directed them, out of the proceeds, to pay his debts. It was held that this manifested a clear intention of the testator to give the personal property to the legatee, his wife, exempt from the liability to pay debts. So in *Bardwell* v. *Bardwell*, 10 Pick., 19, the testator gave to his wife one-third of his personal estate. He then gave to his sons all his personal estate, after deducting what he had given to his wife " and paying my debts." It was held that these words made a charge upon the bequest to the sons, and that they should apply the amount of property given them in payment of the debts, before they should take any part of it for their own use. In that case, there was personal property enough to pay the debts, without resorting to the third, given to the wife, which we understand to be the fact in the present case.

There is a rule in the construction of wills, that every testator is to be considered as intending a benefit to the object of his gift. This rule lies at the foundation of the decisions which hold that where there is a devise of lands, and a condition upon the devisee to pay a sum of money, the devise gives a fee without words of inheritance. The principle on which the rule is founded was recognized as early as *Collier's case*, 6 Term Rep., 16 ;

Cro. Eliz., 379 ; *Doe* v. *Richards*, 3 Term Rep., 356 ; *Doe* v. *Holmes*, 8 Term Rep., 1 ; *Jackson* v. *Merrill*, 6 Johns. Rep., 185 ; *Jackson* v. *Martin*, 18 Johns. Rep., 31 ; *Jackson* v. *Ball*, 10 Johns. Rep., 151.

It is also held that a testator is not to be supposed ignorant of the state of his property, unless it appears upon the will to be so. *Hotham* v. *Sutton*, 15 Vesey, 328 ; *Legge* v. *Asgill*, 1 Turn. & Russ., 268, (n.)

These two principles will aid us in ascertaining the meaning of the testator. And it is to be noticed that there is nothing in the will to show that the payment of the debts was to be charged upon the property devised to the appellants, except the local position of the words. The appellants, were as nearly related to him as the devises mentioned in the second residuary clause, and there is nothing in the case leading us to suppose that he intended to benefit one class of residuary devisees, at the expense of another. But if the construction of the court of probate be adopted, there will be nothing left for the appellants, after paying the debts and legacies. We must suppose that the testator was acquainted with the condition of his property, and knew that one fourth part of the residue would not be sufficient to pay the debts and the legacies, and we cannot presume that he would have made a bequest which he knew, at the time, would be nugatory. It is, we think, no more than a rational exposition of the will, it is only to give to it such a construction as will best carry out the probable intention of the testator, to hold, that as no class of the residuary devisees seems to have a stronger claim in equity than the others, so all should stand on equal grounds, and that the payment of the debts and legacies should be a charge upon all the residuary estate, and not exclusively upon the share devised to the appellants. The decree of this court, therefore is, that the decree of the court of probate be reversed, that the appellants recover their costs, and have execution therefor against the property of the testator, and that the case be remitted to the court of probate for further proceedings.