## WILLIAM M. STEADMAN & CO. v. REUBEN M. WILBUR and Wife.

A married woman having separate property may purchase with it property from her husband, and if the price paid by her be adequate to the value of her purchase, her title will be maintained against the husband's creditors, both at law and in equity. If the title of the wife is a mere equitable one, resting in executory contract, a court of law cannot set it up against a legal title by execution acquired by purchase at a sale under a creditor's levy; but where the wife's legal title has been perfected by deed, a court of law will and ought to deal with the wife's right to purchase from her husband, for a fair equivalent, out of her separate estate, precisely as a court of equity would.

If a wife loans money to her husband out of her separate estate, she has the same right to expect and receive security and repayment and preference in payment, out of his estate, as any other creditor has; although the law will not, from the mere delivery by her of her money to him, or from the permitted receipt by him of her separate income, imply a promise by him to repay her, but will require more, either in express promise or circumstances, to prove that in such matter the husband and wife dealt with each other as debtor and creditor.

Neither an express *prior* promise of the husband nor a promise at the time of the loan, to repay the wife or to secure her out of his estate, is requisite in such case to prove that the husband received the wife's property as a loan, and is therefore entitled, as a creditor, to be secured or repaid by him out of his estate as against his other creditors; but the character in which they dealt with each other may be proved by inferential, as well as direct, evidence.

After two concurring verdicts in favor of the wife's rights to a piece of land purchased by her, with her separate property, from her husband, founded upon evidence direct and circumstantial, of the nature, fairness, and equality of the

transaction, not met by any evidence offered to countervail or impeach it, the court will not grant a new trial upon the ground of a verdict against the weight of the evidence, although the evidence on the part of the wife was not as full as might be desired; especially, where the Judge trying the cause saw nothing in it to excite his suspicion, that the transaction was a fraudulent attempt on the part of the husband to cover his property from his creditors by a conveyance of it for the benefit of his wife.

TRESPASS and ejectment for the possession of three lots of land in the village of Lime Rock, Smithfield; plea, the general issue.

The case was tried at the September term of this court, 1862, for the county of Providence, before the Chief Justice, with a jury, when it appeared, that the plaintiffs claimed title by execution issued upon a judgment rendered in their favor against defendant, Reuben M. Wilbur; the sheriff's deed to them of said lots, bearing date January 21st, 1861. The defendant, Mary H. Wilbur, wife of Reuben M., claimed title under a deed from her said husband to William H. Greene, dated January 20th, 1860, and a deed from said Greene to herself, dated January 21st, 1860, both deeds having been recorded in the records of land title in Smithfield, on the 28th day of January, 1861. The plaintiffs objected that these deeds were without consideration, and on that ground, void against them as creditors of said Reuben M.; and upon this, the issue between the parties, evidence was submitted on both sides, as to the value of the land conveyed, and the consideration paid, out of her separate estate, by said Mary H. Wilbur to her husband for the conveyance of said land through Greene to her, the character of which is sufficiently described in the opinion of the court.

It being claimed in the defence, that said Mary H. had advanced to her husband, from time to time, out of her separate estate, sums of money sufficient to constitute, in the aggregate, a sufficient consideration of said conveyance from her husband to her, evidence was submitted by the defendants to that point; and the presiding Judge refused, notwithstanding the objection of the plaintiffs, to rule out any testimony offered by the defendants to show the wife's ability to make such advances out of her separate property, though relating to her acquisitions of such property as far back as 1840; the evidence being objected to as too remote from the time of the transaction in question.

Upon the question, under what circumstances advances made by the wife out of her separate property to her husband might inure as a valuable consideration of his conveyance, through a third person, to her, in the absence of any trustee of her separate property secured by the statute, the Judge instructed the jury, that if the wife made such advances to her husband, for the purpose of assisting him in his business or paying his debts, under a promise on his part, made before or at the time of such advances, to pay or secure them on his property, and the husband did so pay or secure them by a conveyance of his property to her through a third person, such conveyance would, so far as the consideration was concerned, be valid as against the husband's creditors, provided, in case of a conveyance of his property in payment, the property was, in value, no more than fairly adequate thereto; but that where the wife had given or loaned her property to her husband without such promise made prior to the advance of it, he could not, when insolvent, prefer her by a conveyance, to his other creditors; and further, that in considering the evidence of such promise, the jury had a right to consider, not only the direct evidence thereof, but all those facts and circumstances relating to such advances, if any, from which they might reasonably infer that such advances were made upon the trust and confidence of such promise.

The jury having returned a verdict for the defendants, the plaintiffs now moved for a new trial, upon the ground of error in law in the above ruling and instructions to the jury, and, also, upon the ground that the verdict was against the weight of the evidence.

This cause had been twice fully tried to the jury in this court, with the same result,—the last trial being a new trial, as of course, under the statute.

*Hayes*, with whom was *Eames*, for the plaintiffs :—

I. If the relation of debtor and creditor can be created between husband and wife, where the wife makes advances from her separate estate to her husband for his use, such relation can be created only upon a promise by the husband to the wife, made at the time such advances are made. The court, therefore, erred in charging the jury, that if the wife made such advances under a promise on

the part of the husband, *made before* such advances were made, to pay or secure her on his property, and did so pay or secure her by a conveyance of his property to her through a third person, such conveyance would, so far as the consideration was concerned, although the husband was then insolvent, be valid as against the husband's creditors, provided, in case of a conveyance in payment, the property was in value no more than fairly adequate thereto.

II. The court erred in charging the jury that they might infer a promise on the part of the husband to the wife, to pay or secure her for present or future advances made by her to him out of her separate estate, from the circumstances relating thereto, aside from any proof of a promise made at the time such advances were made.

III. The plaintiffs were entitled to a verdict against R. M. Wilbur, he having an interest in the estate in question, at the time of the plaintiffs' levy thereon, it not appearing in evidence that his wife had then given any notice in writing to the tenants of said estate to pay the rents to her, or that a trustee had been appointed of her separate estate. *Martin & Goff* v. *Pepall*, 6. R. I. Rep. 94.

IV. The verdict of the jury in said cause is against the law and evidence, and against the evidence, and the weight of evidence. 1. There is no evidence in the case showing a promise from the husband to the wife, made either before or at the time of his receiving from her any money, that he would pay, or secure the same to her on his property. 2. The estate conveyed was, upon the evidence, of much greater value than the money received by the husband from the wife out of her separate estate.

*Thurston & Ripley, for the defendants :—*

I. The court did not err in permitting the defendant, Mrs. Wilbur, to offer testimony of her ability to make such advances, though extending as far back as 1840. 1. This is purely a question in the discretion of the court. 2. It could not prejudice the plaintiffs under the instruction of the court. 3. It was necessary to lay a foundation, by showing that the said wife had means of making such advances, and it was not unreasonable to go as far back as 1840 ; the said Mary claiming that her separate

estate, with which she purchased the property in question, came to her through her father, who died just prior to that time.

II. A conveyance of property, after marriage, by a husband to his wife, through a third person, for a *bona fide* and valuable consideration, is valid, both in law and in equity. *Bullard* v. *Briggs*, 7 Pick. 533 ; 2 Kent's Com. 139, 145 ; *Lady Arundell* v. *Phipps*, 10 Vesey, Jr. 147 ; *Picquet* v. *Swan ét al.* 4 Mason's C. C. Rep. 451 ; *Simmons* v. *McElwain*, 26 Barb. 420 ; *Seward* v. *Jackson*, 8 Cowen, 436 ; Am. Law Reg. Nov. 1862, p. 61 ; Ib. Oct. 1860, pp. 761, 762. An agreement by the husband to convey property to the wife, if afterwards conveyed pursuant to the agreement, is sufficient consideration for her advances to him out of her separate estate. *Brown* v. *Jones et al.* 1 Atkyns. 190. The renunciation by the wife of any right or interest which she has, independently of her husband, and which he cannot, by his marital rights, take without her consent, is a sufficient consideration upon which to found a conveyance to her, or in trust for her, by her husband. 67 Law Lib. 295 ; 27 Ib. 85. The questions whether the advances were made in pursuance of her alleged contract with her husband, and whether the advances were a fair equivalent for the lots in dispute, are entirely questions of fact, and have already been passed upon by two juries.

III. The verdict is not against law and the evidence, and the weight of evidence. Besides, when two juries have already passed upon the questions of fact, the court will not interfere except where gross injustice would be otherwise done. *Johnson* v. *Blanchard*, 5 R. I. Rep. 24 ; *Wait* v. *McNeil*, 7 Mass. 261 ; *Curtis* v. *Jackson*, 13 Ib. 507 ; *Hammond* v. *Wadhams*, 5 Ib. 353 ; *Coffin* v. *Phenix Ins. Co.* 15 Pick. 291 ; *Burke* v. *Briggs*, 8 Ib. 122, 126.

AMES, C. J. No one doubts, at the present day, that a married woman, having separate property, may purchase with it an interest in the property of her husband ; and that if the price paid by her be adequate to the value of her purchase, her title will be maintained both at law and in equity. *Lady Arundell* v. *Phipps*, 10 Ves. 139. Even if the purpose of the purchase was to prevent the sale of the property for the husband's debts, and to retain it in the family on account of its peculiar usefulness to or

connection with it, the purpose would not be deemed fraudulent, so that the creditors received a fair equivalent for it. Ib. If the title conveyed to the wife were a mere equitable one, resting in executory contract, a court of law could not set it up against a legal title by execution acquired by purchase from a creditor's levy and sale; but where, as in this case, the wife's legal title has been perfected by deed, a court of law would deal, and ought to deal, with the wife's right to purchase, for a fair consideration, from her husband, precisely in the same way that a court of equity would. Ib., and cases to this point in the defendant's brief. If this be so by the general law, how much more in this State, where, by statute, not only the wife's rights to her property are secured against her husband and his creditors, but her legal identity with respect to it, as a person distinct from her husband, is recognized, and her power to act and contract in the disposal of it, in the modes permitted by law, is acknowledged by legislative enactments.

If she may contract with her husband at all for the purchase of his property with hers, it must be, in regard to his creditors, upon the same principles as to *bona fides*, and the giving of equivalent consideration, that any other purchaser might. If she loans him money, it must be with the same right to expect and receive security or repayment out of his estate, and even preference of payment, that any other creditor has; for it cannot be pretended that a debt, which a court of equity recognizes, may not be preferred in payment by the debtor, in a state of the law which, like ours, admits preferences in payment, as well as a debt which is also recognized in a court of law. She cannot, indeed, when her husband becomes insolvent, convert into debts as against his creditors, former deliveries to him of her money or other property, or permitted receipts by him of the income or proceeds of sale of her separate estate, which, at the time of such delivery or receipt, were intended by her as gifts, to assist him in his business, or to pay their common expenses of living; and, considering the relation between them, the law would not, merely from such delivery or receipt, imply a promise on his part to replace or repay, as in case of persons not thus related; but would require more, either in express promise or circumstances,

to prove that in these matters they had dealt with each other as debtor and creditor. It is not, however, as supposed, a rule of law, that *at the time* of each delivery or receipt of the separate property of the wife by the husband; the latter must expressly promise to repay the former, or to secure her out of his estate, to constitute the relation of debtor and creditor between them in regard to it. Such a promise, made before such transactions and looking forward to and covering them, would, at law as in common sense, avail as well to prove the character of them, precisely as it would between other parties who were dealing with each other on credit and in confidence.

Nor is it true that an *express* prior promise to secure or repay out of the estate of the husband is requisite, in such a case, to prove that her husband received her separate property as a loan, and was therefore entitled, as against his creditors, thus to secure or repay her. Neither at law, nor in equity, is inferential proof to be rejected upon such a subject, more than upon any other, although, as suggested, what are proper inferences may be modified or altered by the relation between the parties. The amounts received, the times when, the occasions, the application of the amounts, the conduct of the parties at or about the times, their relative condition as to property, the time and circumstances attending the payment or security out of the estate of the husband, and the relative value of what has been received and paid, especially if paid by a conveyance of the husband's property, are all proper sources of inference upon such a question, as they would be upon a similar question between other parties.

The question of indebtment by the husband to the wife is not dissimilar to the more common one of a father to a child, for services rendered during minority, complicated, as it must be, with the question of emancipation, or whether the parent has freed the child from his control, and " given him his time," as the common expression is. This question too, arising as it usually does, after the death of the parent, and in contest with coheirs or creditors, often becomes a difficult one, to adjust, with certainty that entire justice is done to all parties; but who ever heard of excluding from its solution evidence of a circumstantial or inferential character, so wisely regarded, so effectually used, not only as a source, but even as a test of truth ?

The danger to the rights of creditors was pressed upon us at the argument of this motion, if we should allow inferences to be considered by a jury, in favor of a wife, who sets up against her husband's creditors a claim to a portion of his property purchased by her during coverture, out of her separate estate. A sufficient reply would be, that we do not sit here to make, but to administer the law; but if this were otherwise, we should as soon exclude the light of the sun from the eyes of jurors, lest when they read a document submitted to them they should see it with distorted vision, as we should exclude from them inferential evidence upon any subject upon which it could elucidate the truth, lest they should draw unfounded inferences. In an especial manner would it be unjust to do so in cases to which husbands and wives were parties, or in which the interests of either were involved. Already they are excluded as witnesses for or against each other in all cases in which either is a party or interested, whilst no other relation excludes a party or interested witness from testifying in a civil cause. If, in addition, they were cut off from all presumptive proof, whatever light it might shed upon their transactions with each other, we know not, considering the privacy of domestic life, to what source of proof they are to look for the protection of their relative rights. We are not so far gone in adoration of the rights of creditors, as to sacrifice to them the rights of everybody else.

The danger of false credit to the husband, if the wife may obtain by secret contract an equity as to his property, which he may prefer to the claims of his other creditors by conveyance to her use, whilst he is the apparent owner, though the property is in the common possession of husband and wife, has also been urged upon us; but this danger was so long ago considered by Lord Eldon, and the rights of the wife as a purchaser, in spite of it, upheld by that learned and discreet Judge, that we dismiss the matter by a reference to his comments upon it. *Lady Arundell* v. *Phipps*, 10 Ves. 145, 146, 150–152.

Our conclusion is, that the Judge trying this cause instructed the jury quite as favorably to the plaintiffs as the law would permit, and that they at least have no cause to complain of his instructions.

Steadman & Co. *v.* Wilbur and wife.

This disposes of the only questions of law raised at the trial, except an objection to evidence which was properly overruled, and which was not mentioned at the hearing of this motion.

The last ground for new trial is, that the verdict is against the weight of the evidence. After two full trials in this court by impartial juries, in which verdicts were rendered for the defendants, we certainly shall not open this case for a new trial, without strong proof that justice imperatively demands it. Upon looking into the evidence, we find that sums of money amounting in the aggregate to the full value of the three lots in question, as proved at the trial, were advanced by the wife to her husband out of her separate estate, and that a very considerable portion of this was shown to have been applied to the payment of his debts. Evidence of the times and circumstances of these advances, and evidence of an explicit promise on the part of the husband to secure or repay them out of his estate, made either at or just after one of the principal of the advances in amount, was also submitted to the jury. The evidence was countervailed by none offered, either in reply to or in impeachment of it; and we cannot say, looking at the evidence, direct and circumstantial, although not as full as might be desired, that the jury must have been mistaken or partial to have rendered the verdict that they did. The Judge trying the cause saw nothing in the transaction proved, to excite his suspicion, that this was a fraudulent attempt on the part of the husband to cover his property from his creditors by a conveyance of it for the benefit of his wife. On the contrary, it appeared to him, as the event shewed it did to the jury, as a fair exchange of the wife's money for the little homestead of the husband on which they lived,—the money being used to carry on his business and to pay his debts, and the homestead to shelter the family. We do not see that this litigation can be rightfully permitted to go any farther; and upon all the grounds, dismiss this motion for a new trial, with costs.