CALVIN T. DEAN *et al. vs.* THOMAS M. ROUNDS *et als.*

Legacy as follows :

"All moneys or legacies coming to me from any source I give and bequeath to . . . ."

*Held*, not to be a specific legacy.

The decision in *Chafee* v. *Maker*, 17 R. I. 739, affirmed and elaborated.

Pending a bill in equity against an administrator for an account, the respondent filed his account as an administrator in the Probate Court. Afterwards the complainants preferred their petition in the equity cause praying that the administrator be enjoined from the prosecution of his account in the Probate Court.

*Held*, that as letters of administration had been issued to the administrator, and bond to account to the Probate Court had been given by him to the Probate Court, before the filing of the complainants' bill, that court had first acquired jurisdiction of the subject-matter of the suit.

*Held*, further, that the petition for an injunction should be denied.

BILL IN EQUITY to construe a will and to establish a claim to a legacy. The will was that of Mary S. (Dean) Rounds and the facts involved are stated in *Chafee* v. *Maker*, 17 R. I. 739, 740–742.

*July* 12, 1893. TILLINGHAST, J. The third clause of the will of Mary S. Rounds is as follows : "All moneys or legacies coming to me from any source, I give and bequeath to my brother and sister, including my stepson, Walter B. Rounds, to be divided equally, to share and share alike." And the first question raised is whether or not said clause creates a specific legacy. We do not think it does. A specific legacy, as the term imports, is a gift or bequest of some definite specific thing, something which is capable of being designated and identified. 1 Roper on Legacies, 190 ; *Case of Walker's Estate*, 3 Rawle, 229, 237 ; *Bradford* v. *Haynes*, 20 Me. 105 ; 2 Wærner's Law of Administration, § 444 and

cases cited. Had the bequest been of "all moneys or legacies coming to me from my father;" of "all legacies coming to me under the Dean will," of "all the furniture belonging to me, in my house at A.," see *Derby, Executor*, v. *Derby*, 4 R. I. 414, 432, it would doubtless have been a specific legacy. *Gelbach* v. *Shively et als.*, 67 Md. 498; *Gardner* v. *Printup*, 2 Barb. S. C. 83, 85 ; *Tomlinson* v. *Bury*, 145 Mass. 346.

But there is certainly nothing which strikes one as particularly specific in the phrase, "all moneys or legacies coming to me from any source." At any rate it is not clear from the language used that the testator intended to create a specific legacy. And the rule is that a legacy should not be construed as specific, unless clearly so intended. *Wallace* v. *Wallace*, 23 N. H. 149, 153, and cases cited ; *Briggs* v. *Hosford*, 22 Pick. 289.

This being so, the defendant, Thomas M. Rounds, as administrator with the will annexed on his wife's estate, is entitled to have and receive from the defendant Zechariah Chafee, trustee under the will of Calvin Dean, all moneys or legacies in his hands which belonged to the testator and which would have come to her in her lifetime had she survived Julia Ann Maker, the life tenant, under the will of Calvin M. Dean. *Chafee* v. *Maker*, 17 R. I. 739, 741.

The question which arises in this connection, then, is as to the amount which said administrator is entitled to receive from said trustee.

We are still of the opinion, as expressed in *Chafee* v. *Maker*, that said trustee is entitled to retain out of the legacy of $3,000 bequeathed to said Mary S. (Dean) Rounds, under the will of said Calvin Dean, the amount of the note of said Thomas M. Rounds and Mary S. Rounds, for $1,500, and the amount of the note of said Thomas M. Rounds, indorsed by said Mary, for $117.50, which notes are now held by said Chafee as part of the trust estate under the will of said Dean. The proof submitted shows that said Chafee, under an arrangement with said Mary, became the purchaser at the foreclosure sale under the mortgage given by said Thomas M. Rounds, of the Kingston farm, as a voluntary purchaser, for

the ultimate benefit of the trust estate, and in no other way or manner ; that said Chafee paid for said farm the sum of $1,545, and took a deed thereof ; that he thereupon, at the request of said Mary, deeded the same premises to her, and that said Thomas and Mary thereupon mortgaged said premises to said Chafee, trustee, to secure the payment of their promissory note for the sum of $1,500, payable one year after date with interest at six per cent. per annum ; that the said note for $117.50 is the tail end of a note of $1,000, which latter sum said Mary borrowed from said trust estate before her marriage to said Thomas M. Rounds, said note being signed by her husband solely for her accommodation and to enable her to adjust her accounts with said Chafee at the time of the purchase by her of said farm, and that said note for $1,500 was given for the sole purpose of enabling the said Mary to become the purchaser, in her own right, of said farm, and as a part of the purchase price to be paid therefor. In brief, the proof shows that the transaction was substantially this : Thomas M. Rounds owned a farm which was subject to a mortgage in the sum of $2,000, given by him. He was unable to pay the amount due on the same, or even the interest thereon, and the result was a foreclosure sale by the mortgagee. At this sale said Chafee, under an arrangement with said Mary that she should have the same, became the purchaser of said farm, using a part of the trust funds in his hands, which would ultimately come to her, in the making of said purchase ; that said farm was then deeded to said Mary by Chafee, in pursuance of said previous arrangement with him ; that she well knew at that time of the legacy of $3,000 which was coming to her under said Dean's will, on the death of Julia Ann Maker ; and that to enable her to give a mortgage back for the purchase price of said farm it was necessary for her husband to join therein, and to sign the mortgage note, which he did, but for her sole benefit and accommodation. Of course, he thereby became personally liable to pay said mortgage note, and so remains, the same not having been paid. That is, as between him and said trustee he assumed the legal liability of paying for property

which became, and was, the absolute estate of his wife, not by way of advancement, but simply for her accommodation, while as between him and his wife he assumed the liability of paying her debt, which was one that arose out of a contract that the statute expressly authorized her to make, and made her and her legal representatives responsible for. See Pub. Stat. R. I. cap. 166, § 4. If, therefore, said mortgage note is paid by him, his wife's estate will honestly and justly owe him the amount thereof. If he pays said other note for $117.50, he will thereby pay a debt which was legally hers when contracted, the original note having been given by her while sole, and which was equitably hers at the time of her decease, the original having been paid in part by her and taken up after her marriage, and a new one given, signed by her and her husband, for the balance due.

The trustee has in his hands said legacy of $3,000, and interest thereon, which, not being a specific legacy, as hereinbefore determined, belongs, in the first instance, to the administrator with the will annexed, to be used, so far as necessary, in the payment of the debts of the testator. Now, why should not the amount of said notes be offset by the trustee against said legacy, in his settlement with the estate of Mrs. Rounds? Suppose Mrs. Rounds had outlived Julia Ann Maker, the life tenant of said legacy. Could she have equitably claimed from said trustee the full amount of said legacy, notwithstanding she had practically received from him, by way of an advance thereon, the amount of said notes? In other words, would the court have compelled him to pay said legacy in full and then resort to his security for the repayment of said $1,500, and to look to said Thomas for the payment of said note of $117.50? We think not. For in equity and good conscience the trustee would only have owed her the balance between the amount of said notes and the amount of said legacy. See *Armour* v. *Kendall*, 15 R. I. 193. Moreover, if the law allows husband and wife to treat each other as debtor and creditor, which they practically did in this case, the offset aforesaid should certainly be allowed. Does it?

In *Hodges* v. *Hodges*, 9 R. I. 32, which was a bill in equity for an accounting, the plaintiff having made advances for the improvement of his wife's real estate and for the payment of taxes, insurance and interest thereon, and having also received moneys for sales and leases of her real estate, the cause was referred to a Master to take the account, and upon exceptions to his report for not allowing compensation to the plaintiff for personal services and interest on the advances made by him, the court, while overruling the first exception, because the decree was not broad enough to authorize the Master to allow compensation for services, yet sustained the other exception, holding that on money lent and on money paid on account, or to the use or benefit, or at the request of another, interest was always allowed, and then added : "Under the law as thus stated, and we think correctly stated, the plaintiff is entitled to interest on his advances, unless, by reason of the relation of husband and wife, the case is an exception to the ordinary rule. No authority has been cited to show that the rule is subject to any such exception, and if husband and wife choose to treat each other as lender and borrower, we do not see why the contract of loan should not carry with it its usual incident of interest, the same with them as with other parties, assuming, of course, that there is nothing in the transaction which would make it inequitable to require payment of interest."

It also appearing in said case that the husband considered himself jointly liable with his wife for the payment of a debt secured by a mortgage on her property, the court, while holding that the plaintiff should be charged with said debt in the account, yet suggested that provision might be made in the final decree, for its payment out of the wife's property and for his protection, if equity so required. We do not overlook the fact that in the case referred to, the wife's property was in the hands of a trustee appointed under the statute, but we do not see that this affected the question of the equitable rights of the husband and wife. In *Steadman* v. *Wilbur*, 7 R. I. 481, this court substantially held that the relation of debtor and creditor might properly subsist be-

tween husband and wife. That was a case where the wife having property of her own under the statute, loaned money to her husband on his promise to repay it, and he afterwards conveyed to her real estate, through a third person, by way of repayment of the loan; and it was held that the conveyance was good at law as against his creditors, if it was no more than a fair equivalent for the loan. See also *Franklin Savings Bank* v. *Greene*, 14 R. I. 1; *Barrows*, *Keene*, 15 R. I. 484, and cases cited; *Elliott* v. *Gower*, 12 R. I. 79; *Livingston* v. *Livingston*, 2 Johns. Ch. 537; 2 Bishop on the Law of Married Women, § 360, and cases cited in note 1. The cases of *Angell* v. *McCullough*, 12 R. I. 47, and *Moulton* v. *Smith*, 16 R. I. 126, cited by the plaintiffs' counsel, do not, as we understand them, control the decision of the question now before us. The former was a bill in equity to establish a lien on the wife's separate estate for the building of a house on her land, under a contract made with the wife alone, and neither authorized or approved by the husband. The question raised was whether the real estate of a married woman was under the statute chargeable in equity for her contracts, in the same manner and to the same extent, as her separate equitable estate would be; and the court held that it was not, the statute not empowering her to enter into contracts relating to her real estate except by deed jointly with her husband. And hence, to hold her liable in such a case, would have the effect of making contracts which are void at law valid as charges in equity. In the case at bar, as we have already seen, the contract out of which the debt of $1,500 arose was not only not void at law, but was expressly authorized by and made in strict accordance with the law.

*Moulton* v. *Smith*, was a bill in equity by the administrator of the husband to establish a lien upon his wife's separate personal estate for her funeral expenses, for probate charges, physician's bill, grave stones, etc.

The court allowed the plaintiff to recover, under Pub. Stat. R. I. cap. 189, § 1, for his wife's funeral expenses, together with the expense of administering the estate, but disallowed the charge for the physician's bill as being a debt

which the wife was unable to contract, and also as one which should be regarded as the personal debt of the husband. We fail to see that this case has any bearing upon the one now before us. It is as much the duty of a husband to furnish medical attendance for his wife in her illness, as it is to provide her with the ordinary necessaries of life. And it is matter of common knowledge that the wife is not responsible therefor. See *Methodist Episcopal Church* v. *Jacques*, 1 Johns. Ch. 456.

Whether, therefore, we treat the said notes as constituting an equitable debt against the estate of Mrs. Rounds in favor of the trustee directly or an equitable debt against said estate in favor of her husband, it makes no difference, so far as the result is concerned, for in either case it is a debt which said estate should pay and discharge before any distribution is made amongst the legatees of the residuum, under her will, it being the statutory, not the equitable estate of the testatrix that is holden therefor.

But the plaintiffs contend that even if these notes were the proper debts of Mrs. Rounds, yet, by her mortgage, she expressly charged them upon her said North Kingstown farm, and hence that the defendant, Walter B. Rounds, took said farm under her will, *cum onere*, and was not, and is not, entitled to have it exonerated by the legacy in question. In support of this position he cites, *inter alia, Gould* v. *Winthrop*, 5 R. I. 319. In that case it was held that the devisee of an estate mortgaged by the testator, whether mortgaged before or after the making of the will is entitled to have the land devised to him exonerated from the mortgage debt, out of the personal property of the testator not specifically given, as the primary fund for the payment of debts; unless, indeed, there be a clear intention indicated by the will, that the devisee should take *cum onere*. As in the case at bar, the mortgage debt in question, as already determined, was the debt of the testatrix, and as there is nothing in her will to show an intention that the devisee of said farm should take it subject to said mortgage, we fail to see wherein the case cited sustains the plaintiffs' claim. The giving of a mortgage on said

farm to secure the payment of said debt, did not have the effect of making it a charge thereon, in the sense that the mortgage *must* first look to that for payment, but simply to insure payment from some source, when due.

From the conclusions to which we have thus arrived, it will be apparent that the principle of subrogation contended for by the plaintiffs, does not apply in this case. The offset to be made simply has the effect to pay the debts of the testatrix, and not therefore to diminish the net assets of the estate, or to deprive the residual legatees under the will, of anything belonging to them.

As to question six, in the issues of fact submitted to us, viz., "Has said Thomas M. Rounds paid any, and if any, what, debts and expenses of his said wife's estate, which he is entitled to retain, and repay the amount thereof to himself, out of said legacy, as alleged in his answer," we make no answer, preferring to leave this matter in the hands of the probate court, where it properly belongs in the first instance. *Blake* v. *Butler*, 10 R. I. 133, 137; *Wood* v. *Hammond*, 16 R. I. 98, 110.

We therefore decide that the amount due on said notes may be retained by said Chafee, trustee, out of the $3,000, and interest thereon, payable to said Thomas M. Rounds, administrator as aforesaid.

After the foregoing decision was rendered, the complainants filed a petition to enjoin the respondent Thomas M. Rounds from further prosecuting the settlement of his account as administrator on the estate of Mary S. Rounds, which he had presented to the Municipal Court of the City of Providence since the filing of the complainants' bill, and which was pending on appeal in the Common Pleas Division of the Supreme Court. The case was then reargued.

*January* 3, 1894. TILLINGHAST, J. Upon the presentation by the respondents' counsel, of a final decree in said case, subsequent to the decision heretofore rendered therein, the complainants' counsel made an extended reargument of the entire case and filed an elaborate brief, reviewing all the pro-

ceedings connected therewith, and urging that the court had erred in said decision, and particularly in relation to the power of a married woman to bind herself by contract, and of the right of subrogation contended for by him, and ought therefore to reconsider or modify the same, so that it shall be in accord with the well settled law of the land and the previous decisions of this court. In connection with, and as a basis for, a part of his said reargument, he filed a petition for an injunction against the respondent Thomas M. Rounds, administrator, to restrain him from the further prosecution of the settlement of his account before the Common Pleas Division of this court, in which the case is now pending on appeal from the Municipal Court of the city of Providence, on the ground that the Supreme Court having first taken jurisdiction over the same on the bill before us, said account should be settled here, and not in the Municipal Court.

And first then, as to the criticism of the complainants' counsel to the effect that the opinion referred to goes to the extent of deciding that the contracts of a married woman create a legal obligation *binding at law* upon her and her legal representatives, or enforceable *at law* against her or them, or against her *general* estate. In *Chafee* v. *Maker*, 17 R. I. 739, we held that the notes in question were equitably the debt of Mrs. Rounds, and hence that the amount due thereon might be retained by Chafee, the complainant in that suit, out of the $3,000 legacy which was payable by him to said Thomas M. Rounds as administrator on her estate. In our former decision in this cause we intended to affirm the doctrine thus expressed, and we now reaffirm the same. We never have supposed, however, nor are we conscious of having decided, that a married woman is legally bound by her contracts, except as provided by statute. We have not said that an action at law could have been maintained against Mrs. Rounds by Chafee for the recovery of the notes in question, for it is perfectly clear that it could not. But we have said, and we think rightly, that said notes were equitably the debt of Mrs. Rounds, and payable out of her estate, for the reason that they were given for, and enured to, her sole

and separate benefit and accommodation, the principal one having been given in part payment for the farm which was conveyed to her by said Chafee, which note was secured by a mortgage on said farm given by her and her husband in the manner required by law, and the other by way of a renewal of the balance due on a note originally given by her while sole and unmarried for the sum of $1,000, for money which she borrowed from the trust estate, which said renewal note was signed by her husband solely for her accommodation and to enable her to adjust her accounts with her trustee at the time of the purchase by her of said farm. In equity and good conscience, therefore, the trustee should be allowed to reimburse himself out of money in his hands belonging to the estate of Mrs. Rounds, for the money advanced to her to enable her to purchase said estate, which estate was by law absolutely secured to her sole and separate use, and also for the balance due on said note of $1,000, given before her marriage with said Thomas; and said trustee should only be called upon to turn over to the administrator, the balance that shall remain after so reimbursing himself. For can it be seriously contended that had Mrs. Rounds become entitled to said $3,000 legacy in her lifetime, she could have recovered the same from her said trustee without permitting him first to deduct therefrom the amount which she equitably owed him on said notes? We think not. And if she could not, then certainly her administrator, who only succeeds to her rights in the premises, can only claim from said trustee the balance due after deducting her said indebtedness. That the particular language which was used by the court in said second decision relating to the power of a married woman to make contracts which should be binding upon her and her estate if taken by itself, might be misleading, is perhaps obvious. But when taken, as it should be, in connection with the facts previously set forth therein, no greater force would ordinarily attach thereto than the nature of the case required. In any event, all that we intended to say was, that the notes in question were equitably the debt of Mrs. Rounds, and should be paid out of her estate in the manner aforesaid.

And secondly as to the question which the complainants again raise, namely, whether they are entitled to be subrogated under the mortgage referred to in said previous decisions, to the rights of said Chafee.   We stated in our former opinion that the principle of subrogation did not apply in this case, and we are still of the same opinion.   Subrogation applies where one party pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.   Sheldon on Subrogation, § 1, and cases cited in note on page 2.   Where a mortgage debt, for instance, is paid by one who is entitled to pay it for his own protection, but is not under any legal liability to do so, he is subrogated by operation of law, to the rights of the mortgagee, the doctrine being founded upon the principle that one who thus pays the mortgage debt is equitably entitled to the mortgage security.   As said in *Keely* v. *Cassidy*, 93 Pa. St. 319,   " The general principle upon which subrogation rests is that whenever any one pays a debt for which he is liable as surety or guarantor, it is equitable that he should be substituted in place of the creditor."   It is also stated in the same case that " the principle which governs in all cases of substitution is one of equity merely and is to be carried out in the exercise of an equitable discretion with a due regard to the legal and equitable rights of others."   In *National Bank* v. *Cushing*, 53 Vt. 321, 326, the court say :   " It is only in cases where the person paying the debt stands in the situation of a surety or is compelled to pay in order to protect his own interests, that a court of equity substitutes him in the place of the creditor as a matter of course, without any special agreement."   See also *Cole* v. *Malcom*, 66 N. Y. 363 ; *Stevens* v. *King*, 84 Me. 291.   By the settlement with the administrator, which we allowed the trustee to make in *Chafee* v. *Maker*, *supra*, the estate of Mrs. Rounds simply paid a debt which she owed.   It was not paid by the complainants or either of them, they were under no obligation to pay it, nor was it paid with their money.   The assets of Mrs. Rounds' estate were not diminished and no one was wronged by this proceeding, for the complainants were not

entitled to her personal estate in gross, but only to the net amount thereof,—that is, to what remained after the payment of her debts. But the complainants' counsel urge that the doctrine of subrogation almost universally, if not strictly always and necessarily in a case of this character,—of legatees,—only arises where debts which the legacy moneys are taken to pay *are legal debts* of the testator; that the doctrine almost universally rests upon the fact that the moneys are .assets in the hands of the executor or administrator, which, so far as he is concerned, he has rightfully used and applied to pay the proper legal debts of the estate; for if he wrongfully used them he and his bondsmen would be liable personally. And it is because he has so properly applied them in his administration of the estate, an application which, being thus legally and properly made, the legatee could not prevent, that a court of equity, applying this, its own peculiar and exclusive doctrine of subrogation, substitutes the legatee in the place of the creditor thus paid under, and gives him the benefit of, the creditor's security. He therefore contends that so long as the money which Chafee, trustee, was allowed to retain out of the $3,000 legacy due to the estate of Mrs. Rounds, which money otherwise and rightfully belonged to the legatee under her will, was by way of set off as aforesaid, taken to pay the secured debt of the testatrix, her legatees have the right to be substituted in the place of said Chafee under the mortgage.

As to specific legacies the law doubtless is, that in marshalling the assets of an estate such legacies cannot be applied in exoneration of a devisee from an encumbrance to which the testator had subjected the devised estate; *Johnson* v. *Child,* 4 Hare, 87 ; 2 Jarman on Wills, *636–637 ; although the devisee is entitled to have his estate exonerated out of the general personalty, unless it is clear from the will that he was to take it *cum onere.* And such being the rule, if a specific legatee is deprived of his legacy by the payment of a debt secured by mortgage, he is entitled to be subrogated to the rights of the creditor against the land, to the extent of his legacy, or to the value of the personal estate so appro-

priated. And there are cases which hold that the exoneration of a devisee cannot be claimed even as against a pecuniary legatee, and that to the extent to which it is thus exonerated, such legatee is entitled to stand upon the devised estate, in the place of the mortgagee. *Wythe* v. *Henniker*, 2 Myl. & K. 635, 645 ; 2 Wœrner's American Law of Administration, § 494 ; Sheldon on Subrogation, § 211. See also the *dictum* of Brayton, J., in *Gould* v. *Winthrop*, 5 R. I. 319, 323, and the *dictum* of the Master of the Rolls in *Selby* v. *Selby*, 4 Russ. 336, 341. But whether this latter doctrine is correct or not we are not now called upon to determine, for the reason that, as we construe the will of Mrs. Rounds, the personal estate bequeathed to the complainants included only what should remain after discharging her liabilities. In short, that the clause, "All moneys or legacies coming to me from any source I give and bequeath to my brother and sister, including my stepson Walter B. Rounds, to be divided equally, to share and share alike," included all the personal estate of the testatrix not otherwise disposed of, and is, therefore, a general residuary bequest; and hence the case falls clearly within the decision of *Gould* v. *Winthrop*, *supra*, which holds that such a bequest is chargeable with all the debts of the testator, and that it is only the rest and residue thereof which passes to the legatee. It is true there is no direction in the will to pay the debts of the testatrix, but every person who makes a will is presumed to know the law, and to make his will in reference to it. And his estate is equally bound without, as with, such a direction, and in the order required by law. And as all the gifts in the will before us, excepting the one in question, are clearly specific, it is fair to infer that the testatrix intended that this should be subject to the payment of her debts. That a bequest of this sort is residuary, see *Walker's Estate*, 3 Rawle, 229 ; *Hinckley* v. *Primm*, 41 Ill. App. 579 ; *Decker* v. *Decker*, 121 Ill. 341 ; *Waite* v. *Combes*, 5 DeG. & Sm. 676 ; *Cadogan* v. *Palagi*, L. R. 25 Ch. Div. 154. There are, therefore, no equities in the case which the complainants are entitled to urge.

And, finally, as to said petition for an injunction. It sets

forth that the complainants filed their bill in this case on the 13th day of July, 1892, in which they pray, amongst other things, that an account may be taken under the direction of this court of the personal estate, debts and expenses of said Mary S. Rounds as administered by said Thomas M. Rounds; that since the filing of their said bill said Thomas has filed his account as administrator in the Municipal Court of Providence, and that the settlement thereof is now pending on appeal in the Common Pleas Division of this court; and prays that said Thomas may be enjoined from the further prosecution of said account before the Common Pleas Division.

The ground of this petition as stated in the brief is that as this court has concurrent jurisdiction with the Municipal Court over the matter in question, and as it first obtained jurisdiction thereof, it must exclusively adjudicate the same. In *Blake* v. *Butler*, 10 R. I. 133, which is specially relied on in support of this contention, this court refused to entertain a bill for the settlement of the administrator's account, saying that the Court of Probate which granted administration on the estate, was the appropriate tribunal to which the respondent was required to resort for that purpose. It is true that in that case, the account of the administrator was presented to the Probate Court for allowance, prior to the filing of the bill, while in the case at bar it was not presented until after the filing of the bill in this court. But letters of administration had been issued to the administrator in this case and bond had been given by him in the usual way to account to the Municipal Court in his said capacity, before the filing of this bill. So that, while the account which we are now urged to pass upon had not been presented in the Municipal Court, yet the court had taken jurisdiction of the *subject matter* in question prior to the filing of the bill in this suit, and, under the authority of *Blake* v. *Butler, supra,* " the court which first takes jurisdiction of the *subject,* must exclusively adjudicate, and neither party can be compelled into another court *for anything that may be adjudicated* by the first." We think the more appropriate place for the settlement of the accounts of an administrator in the first instance

is in the Probate Court from whence he obtained his authority to administer, and to which he expressly bound himself to account. But, as said in *Wood* v. *Hammond*, 16 R. I. 98, 110, "applying the rule invoked by the petitioners most strictly, we do not think it would exclude the court from using other courts as auxiliary to itself."

The petition for injunction is denied, and the case will be allowed to stand to await the settlement of the administrator's account in the Common Pleas Division of the court.

*James Tillinghast & Theodore F. Tillinghast*, for complainants.

*Joseph C. Ely & Isaac H. Southwick, Jun.*, for respondents.