RUFUS S. RANDALL & als. *versus* ALFRED LUNT.

A husband, although he be insolvent, may convey real estate to his wife, in payment of a note given her by him, for money of hers loaned him, if there be no intent to defraud or delay creditors.

The sons of a married woman deposited with her notes against her husband, to be used by her during their absence, "in any way she might think proper for her own benefit." Sometime afterwards she surrendered these notes, and also a note payable to herself, upon receiving a deed of certain real estate, made by her husband to her sons and herself. One of her husband's creditors attached the estate before the sons had knowledge of the conveyance, and afterwards levied thereon. In a suit brought by the wife and her sons against the attaching creditors to recover the estate, *it was held*, that

Randall *v*. Lunt.

it was no cause for exception that the jury were instructed they would be authorized to sustain the conveyance if they should find from the evidence that the sons had constituted their mother the judge of her own necessities, and that she deemed the purchase necessary, — provided.the transaction on the part of the mother was not done to delay or defraud creditors of her husband or intended in any way for her husband's benefit.

EXCEPTIONS from the rulings at *Nisi Prius* of TENNEY, C. J.

This is a WRIT OF ENTRY for a tract of land and buildings thereon, situated in Woodstock. The writ is dated September 24, 1860. Plea, general issue.

The demandants claim title by virtue of a warranty deed of the demanded premises to them, from Joseph Frye, dated March 15, 1856, acknowledged same day, and recorded March 17, 1856. Consideration named in the deed is $2000.

The demandant, Lydia Frye, is, and then was, the wife of said Joseph Frye. The other demandants are her sons, by a former marriage, — and were at sea, on foreign voyage, as masters of vessels, when said deed was executed as aforesaid — and did not return home for about a year after such execution of the deed. They made their home, when not at sea, at their mother's. They have been at home but rarely and for short periods, for ten years or more, last past. They have been of age during that time.

They had promissory notes of hand, payable to them or order, against said Joseph Frye, and other persons, amounting to some $1400 or $1500, which they left with their mother, but did not indorse them. Mrs. Frye held a note against her husband, which had been due for some three or four years, for $250, given for money which she had loaned to him, and which money she received from the sale of real estate owned by her, prior to her marriage with Joseph Frye.

The demandant, Rufus S. Randall, as witness, called by the demandants, testified that when leaving home, he gave his mother verbal directions, to use his money in any way

she thought necessary for her benefit; she did not mention, nor did I direct in what way she should use it. I told her she might use the notes in any way she thought proper, for her own benefit. That he designed this place as a home for his mother, and for himself when at home, — had no family of his own."

Mrs. Frye, the demandant, also called by the demandants, testified, — "My sons always told me if I wanted any money or thing, for me or my daughters, to go and get it and use it as I was a mind to. My daughters are own sisters to my sons. I have gone to their employers and got money, before this. I always went and got what I wanted. I deemed the purchase of this place necessary to constitute me a home, but had no design to delay or defraud my husband's creditors, in any way, — or to benefit him. The sons were not at home after the fall of 1855 until the summer of 1857."

On March 15, 1856, Mrs. Frye, the demandant, procured the deed aforesaid, to be executed to herself and sons, as before mentioned, in the absence of her sons at sea, as before named, and as consideration therefor, delivered to said Frye the notes before mentioned, due to herself, and her sons, amounting to, from $1600 to $1800. The notes, other than those of Mr. Frye, were good and collectible.

Said Joseph Frye was in debt and insolvent, when said deed was executed. The tenant claims title by levy of execution on said premises demanded, having sued and attached the same, for a debt due to him from said Joseph Frye before his said conveyance; and having obtained judgment and execution perfected a levy thereon.

His attachment on the original writ, and seizure on execution, were subsequent to said conveyance; but the attachment was made before the said Randalls returned from sea, and before they knew of the conveyance aforesaid. The respondent contended that the conveyance aforesaid was void and inoperative as against him, a creditor prior to the conveyance; — That Mrs. Frye was not authorized to pur-

chase the premises for her sons, in their absence and without any other authority than that testified to by said Rufus S. Randall, and Mrs. Frye; that the conveyance must be regarded as made to her only — and for the consideration of her note of $250 only, delivered up to her husband as aforesaid; that the evidences show no authority conferred on her, by her sons, to surrender or transfer their notes to her husband; that verbal authority would not be sufficient therefor, and for her to take conveyance of real estate to them; and would not be sufficient to enable her to take a conveyance to them, that should be valid against prior creditors, who attached, and seized, and levied on the premises before the said Randalls had accepted the deed and ratified such conveyance.

The presiding Judge overruled these objections and instructed the Jury : —

That, if Mrs. Frye was not authorized by her sons, John and Rufus, to make the purchase, then no title would pass to them, until they had ratified it; and that, if defendant's attachment was made before such ratification, it would be valid against the deed; that they would further find, from the evidence in the case, whether the sons, John and Rufus, had constituted their mother, Mrs. Frye, the judge of her own necessities; and, if they had, and she had deemed the purchase necessary to constitute her a home, that then they would be authorized to find for the demandants, provided the transaction, on the part of Mrs. Frye, was not done to delay or defraud creditors of her husband, nor intended to furnish a home for him, or to benefit him in any way.

The verdict was for the demandants, — and the tenant excepted.

*Howard & Strout,* in support of the exceptions.

*Hammons, contra.*

The opinion of the Court was drawn up by

DICKERSON, J. — Writ of entry. Both parties claim to

have derived their title from *Joseph Frye*, husband of the demandant, *Lydia Frye;* the demandants, by warranty deed dated March 15, 1856, and the tenant by a subsequent levy of his execution issued on a judgment recovered prior to that date. The other demandants were sons of *Lydia Frye* by a former husband. As they were about to leave home, on a voyage to sea, they left with their mother, without indorsement, certain promissory notes, payable to them or their order, against Joseph Frye and other persons, amounting to $1400 or $1500. Lydia Frye held a note, then overdue, against her husband, for $250, given for money loaned to him, and being the proceeds of the sale of real estate owned by her prior to her marriage with him. She procured the deed of March 15, 1856, to be executed to herself and sons, during their absence at sea, and, as a consideration therefor, delivered to her husband, Joseph Frye, her own note and also the notes of her sons, before named, amounting in all, from $1600, to $1800. Joseph Frye was in debt and insolvent when this deed was executed.

The demandant, *Rufus S. Randall*, as witness, called by the demandants, testified that, when leaving home, he gave his mother verbal directions, to use his money in any way she thought necessary for her benefit; she did not mention, nor did he direct in what way she should use it. He told her she might use the notes in any way she thought proper, for her own benefit; that he designed this place as a home for his mother, and for himself when at home, — had no family of his own.

*Mrs. Frye*, the demandant, also called by the demandants, testified : — " My sons always told me, if I wanted any money or thing, for me or my daughters, to go and get it and use it as I was a mind to. — My daughters are own sisters to my sons. I have gone to their employers and got money before this. I always went and got what I wanted. I deemed the purchase of this place necessary to constitute me a home, but had no design to delay or defraud my husband's creditors, in any way, — or to benefit him. The sons

were not at home after the fall of 1855, until the summer of 1857."

The presiding Judge instructed the jury : — That, if Mrs. Frye was not authorized by her sons, John and Rufus, to make the purchase, then no title would pass to them, until they had ratified it, — and that, if defendant's attachment was made before such ratification, it would be valid against the deed ; that they would further find, from the evidence in the case, whether the sons, John and Rufus, had constituted their mother, Mrs. Frye, the judge of her own necessities ; and, if they had, and she had deemed the purchase necessary to constitute her a home, that then they would be authorized to find for the demandants, provided the transaction, on the part of Mrs. Frye, was not done to delay or defraud creditors of her husband, nor intended to furnish a home for him, or to benefit him in any way.

The verdict was for the demandants and the tenant excepted to the foregoing instructions.

The directions given to Lydia Frye, by the other demandant, Rufus S. Randall, were verbal and general in their character. She "was to use the notes *in any way* she thought proper, for her own benefit." She accepted the delivery of the notes under this stipulation and with this understanding. No one save herself was authorized to decide what disposition of the notes was "proper for her own benefit." This right was withheld, not only from her husband and his creditors, but also from her sons.

If she misjudged in the use she made of the notes, it was her misfortune, and her husband's creditors have no right to complain, if they were not delayed or defrauded thereby. The law certainly does not look with disfavor upon such acts of filial affection. The conduct of the Randalls in this respect was not only legal but praiseworthy. The right "to use the notes in any way she thought proper, for her own benefit," authorized the mother to use the whole or a part of them for her immediate benefit, or to have them discounted, and to invest the proceeds in public stocks, or to ex-

change them for real estate, that she might secure to herself a present and a future home. Her husband, moreover, had a right to prefer any of his creditors, even though they were his wife and her sons. The proof was ample to warrant the instructions of the Judge, and the finding of the jury thereon, that Mrs. Frye's sons have constituted her the judge of her own necessities. *Cole* v. *Littlefield*, 35 Maine, 439.

Mrs. Frye testified that she deemed the purchase of the place necessary to make her a home, and, under the instructions of the Judge, the jury found that fact. This was manifestly "for her benefit," and what she had a right to do, so far as her own note was concerned, under R. S., c. 61, § 1. But it is argued by the counsel for the tenant that Mrs. Frye had no right to take a deed; that, if she had, she could not take one running to herself *and* her sons, and further, that the deed of the 15th March, 1856, if otherwise valid, was inoperative for want of a valid delivery.

It is a familiar principle of law that where a distinct authority is given to do a certain thing, that authority carries with it an implied power to do whatever else may be necessary for that purpose; the greater includes the less authority. Having the right to use the notes "for her own benefit," and being constituted the sole judge of her necessities, as we have before said, Mrs. Frye may still have been unable, without great sacrifice, to give effect to the purpose of the deposit of the notes with her unless she had authority to take a deed. She might not have been able to obtain the money on the notes, except at a great discount, while at the same time the opportunity may have been presented to her to invest their proceeds in real estate that should make her a comfortable home through life. The doctrine contended for presents to her the alternative of submitting to the loss of a large per cent. of the fund designed for her benefit, or of enduring privation and want. It is a sufficient answer to this objection, that she was made the judge of what use of the notes would best promote her comfort; that she

Randall *v.* Lunt.

chose to invest them in real estate, and that the rules of law do not prohibit her from so doing.

Nor is it a valid objection that the notes were not indorsed to Mr. Frye. In *Borneman, Admr.*, v. *Sidelinger & al.*, 15 Maine, 429, the Court held that a negotiable promissory note payable to order, may be the proper subject of a gift *causa mortis* without indorsement; that in such a case the equitable interest passes to the donee, and that, if there be a mortgage given as collateral security, it is held in trust for his benefit, and may be enforced in the name of the representative of the deceased, as the principal debt may be, also, if necessary.

The same doctrine has been repeatedly held in Massachusetts. *Grover* v. *Grover*, 24 Pick., 261; *Sessions* v. *Moseley*, 4 Cush., 87; *Bates, Admr.*, v. *Kempton*, 7 Gray, 382.

From her right to invest the proceeds of her own note, and those of her sons in real estate, results her authority to take a deed thereof in the name of all of them; and she had the same right to take delivery of such deed that she had to make the purchase.

Entertaining these views of the questions presented in the exceptions, we have no occasion to consider the validity of the levy.

Finding, therefore, no error in the instructions of the presiding Judge, we must overrule the exceptions.

> *Exceptions overruled and*
> *Judgment on the verdict.*

APPLETON, C. J., DAVIS, KENT and WALTON, JJ., concurred.