## WILLIAM BEAN *vs.* MARY A. BOOTHBY.

To constitute an indirect conveyance of real estate to a married woman by her husband, within the meaning of R. S., c. 61, § 1, the deed from him must be made as one step in the conveyance to her, for her benefit, and for the purpose · of getting the estate into her hands.

If the grantee of real estate mortgage it back to secure the purchase-money, and the mortgagee assign *bona fide* the mortgage to the wife of the mortgager, such assignment will not operate as a discharge of the mortgage.

And if, when the mortgage given back for the purchase-money of real estate is assigned *bona fide* to the wife of the mortgager, the husband quitclaim to her, and she thereupon convey to a third person, by a deed of warranty, therein referring to the mortgage, "as having been cancelled by assignment," the mortgage will not thereby become merged, but it will be upheld.

ON REPORT.

WRIT OF ENTRY.

On Nov. 24, 1855, one Moses Morrill owned the premises in con-

troversy, when he conveyed them to Leander Boothby, the defendant's husband, and at the same time took back a mortgage of the same premises to secure the payment of $900 as therein provided. On Feb. 6, 1858, Morrill, having previously recorded a judgment upon the mortgage, took possession under a writ of possession; and by deed of quitclaim, dated Dec. 11, 1860, but delivered Dec. 22, 1860, he assigned his interest to the defendant, who, on the last day named, conveyed by deed of warranty to the plaintiff, the defendant's husband having on the same day quitclaimed his interest to her.

Charles W. Pierce and others, creditors of Leander Boothby, attached all the right, title, and interest he had in any real estate in this county, on Dec. 26, 1856. Execution issued on the judgment recorded in that case Oct. 24, 1861, and a levy made on the premises, as the estate in fee-simple of Leander Boothby, Nov. 4, 1861. The levy and all the deeds mentioned were duly recorded. It appeared in evidence that the plaintiff furnished the money to pay the consideration of the deed from Morrill to the defendant.

The court were to enter the legal judgment.

*Moore & Drew*, for the plaintiff.

*E. B. Smith*, for the defendant.

The issue is, which has the better title in himself. The defendant being in possession, will prevail, unless the plaintiff show that as to him her possession is wrongful. *Wyman* v. *Brown*, 50 Maine, 144.

I. The plaintiff counts on his own seisin; and, to defeat his title, the defendant may show that the plaintiff was never seized. Jackson on Real Actions, 4, 157. Stearns on Real Actions, 365, 380.

Plaintiff must show actual seisin. *King* v. *Barnes*, 13 Pick. 24. *Hall* v. *Stevens*, 9 Met. 421. *Cutler* v. *Lincoln*, 3 Cush. 128. *Parlin* v. *Haines*, 5 Maine, 178. *Wms. Col.* v. *Mallett*, 16 Maine, 84. *Bussey* v. *Grant*, 20 Maine, 281.

Bean shows no other seisin (and no other title) than that derived from deed of tenant to him, of Dec. 22, 1860; its validity

(and his claim to the premises) depend upon the character and derivation of her title.

II. If the defendant derived her title " directly or indirectly " from her husband, she cannot convey, " without the joinder of her husband in such conveyance " (R. S. c. 61, § 1), and the plaintiff fails in this action.

All her title was conveyed to her " directly or indirectly " from her husband. Moses Morrill was the undisputed owner; Nov. 24, 1855, he conveyed to Leander Boothby, and took ¦back from him a mortgage of even date, to secure notes specified therein. Before the completion of the process of foreclosure the mortgagee assigned the mortgage to the mortgager's wife, which extinguished the mortgage. *Clark* v. *Wentworth*, 6 Maine, 259.

Morrill assigned to Mrs B.; he transferred to her a claim or title to the estate derived from her husband. Morrill didn't give, grant, nor convey the land to Mrs. B., nor make any covenant relative thereto ; he only turned over to her her husband's notes and deed ; her claim as assignee then came " indirectly " from her husband. Morrill's deed and the title he conveyed to tenant, were paid for by the notes of Leander Boothby.

All her other claim to demanded premises came " directly from her husband by his deed of Dec. 22, 1860, to her, which is expressly mentioned and referred to in (and thereby made ¦part of) the tenant's deed to Bean, under which he claims ; therefore he certainly had " actual notice " of Leander Boothby's conveyance to Mary A. Boothby, which is equivalent to record, and makes it immaterial when this deed was recorded, or if ever recorded, so far as plaintiff is concerned.

III. By well-settled principles of common law, a *feme covert* who owns the fee of land, can convey it only by deed executed by herself and husband, and when both are parties to the effective and operative part of the instrument of conveyance. *Lithgow* v. *Kavanagh*, 9 Mass. 161, 172. *Bruce* v. *Wood*, 1 Met. 542, 543. *Concord* v. *Bellis*, 10 Cush. 276. *Jewett* v. *Davis*, 10 Allen, 71, and cases there cited.

Our Rev. Sts. have changed the common law only so far as relates to land owned by a *feme covert* in her own right; it remains unaltered as to property conveyed to her " directly or indirectly " by her husband.   R. S. c. 61, § 1.

A married woman's deed, at common law, is absolutely and *ipso facto* void,—not merely voidable.   10 Cush. 276, 277.   Co. Lit. 426, and note 4.   2 Kent's Com. 167, note.   Cruise's Dig. Tit. " Deed," c. 2, § 24.   *Fowler* v. *Shearer*, 7 Mass. 14.   *Lane* v. *McKeen*, 15 Maine, 304.   *Watrous* v. *Chalker*, 7 Conn. 225.   2 Story's Eq. Jur., §§ 1388, 1391.

And is so still in cases not sanctioned by statute.   *Jewett* v. *Davis*, 10 Allen, 71, 72.

1. The debt is the principal thing; the mortgage is only ancillary thereto, and security therefor.   If the debt be paid, the mortgage is discharged.   *Patch* v. *King*, 29 Maine, 451, 452.   *Smith* v. *Stanley*, 37 Maine, 11, and books *passim*.

Debt is extinguished by the marriage (at common law); by parity of reasoning it is also extinguished by assignment to the wife. 6 Maine, 259, cited *supra*.   *Greenleaf* v. *Hill*, 31 Maine, 563.   *Carlton* v. *Lovejoy*, 54 Maine, 445.   *Jordan* v. *Jordan*, 52 Maine, 320.

The statutes relating to rights of married women, being in derogation of the common law, have been (and are to be) strictly construed.   Sedgw. on Stat. and Const. Law, 313.   *Graham* v. *Van Wyck*, 14 Barb. 531, 582.

See all recent Maine decisions on this subject, especially *Howe* v. *Wildes*, 34 Maine, 573; *Crowther* v. *Crowther*, 55 Maine, 562.

They are all prospective.   *Bryant* v. *Merrill*, 55 Maine, 515. *McLellan* v. *Nelson*, 27 Maine, 129.   *Greenleaf* v. *Hill*, 31 Maine, 562.

Then, while Public Laws of 1843, c. 24, cannot act retrospectively upon this conveyance, it shows that prior to that date a married woman could not convey any interest she held in real estate to secure a debt due her from her husband, without his joining in the conveyance.

No statute can be found (prior to one last above cited) author-

izing the wife to convey by her sole deed any interest in land derived either "directly or indirectly" from her husband, whether that interest be defeasible or absolute.

2. Both by common law, and, as it now stands, the assignment of the mortgage by Morrill to Mary A. Boothby, discharged it; because,

(a) This was the intention of the parties, which ought to govern. Story on Cont., § 634 *et seq.* *Gibson* v. *Crehore*, 3 Pick. 482.

This intention is to be gathered from the contract, and not from parol evidence. *Wade* v. *Howard*, 6 Pick. 392.

It is only when so intended by parties, that conveyance operates as assignment. *Crooker* v. *Jewell*, 31 Maine, 306. *Gibson* v. *Crehore*, *supra*.

It was the evident intention to merge the whole title in Mary A. Boothby; she so states expressly in her deed to demandant, and both parties to that deed are estopped to deny it.

(b) To constitute it a mere assignment, it must be to a "stranger." *Dockray* v. *Noble*, 8 Maine, 278. 6 Pick. 392. And our legislation has not yet made husband and wife legally strangers to each other.

(c) And there must be a delivery of the note, or other personal security, to which the mortgage is collateral. 8 Maine, 278. *Dixfield* v. *Newton*, 41 Maine, 223. *Webb* v. *Flanders*, 32 Maine, 175. *Wade* v. *Howard*, 11 Pick. 297.

They have not (and do not pretend to have) the notes which were paid.

(d) The fact that Bean furnished Mrs. Boothby the money to procure Morrill's deed to her is immaterial; it does not affect his legal rights.

(e) The same objection lies to the admission of evidence of the Pierce judgment and levy.

It avails nothing; defendant holds by possession, as well as under Leander Boothby's deed; to prevail, the demandant must show a better title in himself, not in Pierce *et als.*

And (the mortgage, having certainly been "cancelled and dis-

charged "), the demandant never having been in actual possession, and counting upon his own seisin, defeats his own action by showing the "better title" and the seisin in Pierce *et als.*, and not in himself. *Buzzey* v. *Grant*, 20 Maine, 281. *Cutler* v. *Lincoln*, 3 Cush. 125. *Thayer* v. *McLellan*, 23 Maine, 417.

The levy is admissible to show that Bean never had "seisin" of the premises, but for no other purpose.

(f) It is also immaterial whether Boothby was solvent or insolvent. Bean is not (and never was) a creditor of Boothby. It don't concern him whether that deed from Boothby to his wife was fraudulent or *bona fide;* and it does not lie in his mouth to impeach it, since it is expressly incorporated into, and made part of the deed under which he claims.

The very case cited by demandant (*Crosby* v. *Taylor*, 15 Gray, 64) only says that such a deed would be [an assignment of the mortgage (when made to a stranger, and not to mortgager's wife), by virtue of certain other recitals and the peculiar circumstances of that case. Though that deed were fraudulent as to creditors, it is admitted to be "good as between the parties." *Crosby* v. *Taylor*, 15 Gray, 66.

Bean cannot use Pierce's levy to obtain possession of premises levied upon and hold them against Pierce. The respondent (Taylor) in case above cited (15 Gray, 64) was in the position of Mrs. Boothby, with the important exception that he was not a *feme covert.* He claimed that there was no merger; plaintiff claims that there was in this case. The petitioner (Crosby) stood in position of Pierce *et als.* to Boothby; not as Bean stands. There is no pretense that if Taylor had undertaken to convey the premises discharged of the mortgage, that the court would still have held it to be in existence.

It is the interest (or rather the intent) of the party into whose hands the mortgage and equity first comes, that decides whether it does, or does not, merge; not what a person who may subsequently purchase of that party might eventually wish. 3 Pick. 482.

And that intent cannot be shown by parol. *Wade* v. *Howard*, 6 Pick. 392.

In case *Wade* v. *Howard*, an assignment of a first mortgage to the person who held the equity of redemption was held to be a discharge of the mortgage, though a second mortgage intervened. 6 Pick. 492, 500. Same case, 11 Pick., 289. *Gardner* v. *Astor*, 3 Johns. c. 53. *Coates* v. *Cheever*, 1 Cow. 460. *James* v. *Morey*, 2 Cow. 301. *Forbes* v. *Moffat*, 18 Ves. 390. *Eaton* v. *Simonds*, 14 Pick. 104. *Warren* v. *Jennison*, 16 Gray, 561.

DANFORTH, J. The demandant claims the premises in dispute by virtue of a deed of warranty from the tenant to himself, dated December 22, 1860. The validity of this deed is the only question in issue. On the part of the tenant, it is contended that it is void, because at the time of its execution the grantor was, and still is, a married woman, and received her title directly or indirectly from her husband, who did not join in the conveyance. It may be admitted that this proposition is true in law if it were so in fact. But the case shows no facts upon which it can rest. The conveyance to the tenant is in no legal sense either direct or indirect from her husband; if she holds under the mortgage it certainly is not direct, nor can it be indirect, for the title comes from Morrill by assignment of his mortgage. It is true, she traces her title through her husband; but this is not in the legal sense holding by virtue of a conveyance from him.

The language of the R. S., c. 61, § 1, limits the wife's capacity to convey to such real estate only, as has been "directly or indirectly conveyed to her, or paid for by her husband."

The indirect conveyance here referred to, must have the same force and effect as the direct. It must convey the land from the husband to the wife. Direct where it is conveyed at once to her, indirect when conveyed to her through the medium of one or more intervening persons. The deed from him must be made for her benefit, as one step in the conveyance to her, and for the purpose of getting the estate into her hands. This being accomplished

through one or more mesne conveyances, it would be an indirect conveyance to her. When the mortgage to Morrill was made, it was not, so far as appears, made with any expectation that it would be assigned to the wife, or for any such purpose. It was not adopted as a means or any instrumentality to accomplish a conveyance to her. A wife is not prohibited from conveying land without the joinder of her husband simply, because he may have once owned it, but because it was conveyed by him to her.

But further, as regards this mortgage, the husband had nothing to convey. Morrill's deed to him, and the mortgage back, were but one transaction. His seisin was but instantaneous, and carried with it no rights whatever, as against Morrill or any one holding under the mortgage. The mortgage being foreclosed, Morrill would not hold under the husband, but by virtue of his own original title and his assignee, whether immediate or remote, whether the tenant or her grantee, would hold by the same title. Hence it may with propriety be said that the wife holds neither indirectly from her husband, nor even under him, but under Morrill. No one could interfere with her title by virtue of any claims against her husband, no one could disturb her except by showing a title paramount to that of Morrill.

But it is said that the assignment of the mortgage to the wife operated as a discharge of it. This may be true under the common law, but not under our statutes as then and now in force. She was authorized to buy and sell property. This mortgage, with the debt thereby secured, was property which she had the same right to purchase and hold as any other. If a note given by the husband to the wife is valid, she must certainly have the right to purchase and hold a note given by him to a third person. *Randall* v. *Lunt*, 51 Maine, 246.

But it is said that when the tenant took the deed from her husband, her interest under the mortgage merged in that, and she, therefore, held directly from him. Mergers are not favored in law or in equity, and the separate estates will be sustained when the parties so intend, and this intention will be inferred, when justice permits,

and the interests of the parties require it. *Simonton* v. *Gray*, 34 Maine, 50. *N. E. Jewelry Co.* v. *Merriam*, 2 Allen, 390. 2 Washburne on Real Property, 3d ed. 180.

The same result follows, notwithstanding the words in the deed of the tenant to the demandant, referring to the mortgage as "having been cancelled by assignment." *Crosby* v. *Taylor*, 15 Gray, 64.

The interest of the tenant and her grantee, alike require the upholding of the mortgage, otherwise the creditors of the husband would have taken the whole estate. The tenant ¸then received a title from Morrill under the assignment of his mortgage to her. This title she held independent of her husband, not merged in his deed to her, and conveyed to the demandant.

There is another view of this case which leads to the same result. The tenant stands in the same condition in relation to the premises in dispute, as did her husband when he gave the mortgage to Morrill. She never had other than an instantaneous seisin. The case finds that the demandant furnished the money with which the tenant purchased the mortgage. The assignment to the tenant and the deed from her, were delivered at the same time and place. The deed of the husband was executed the same day. These facts necessarily lead to the conclusion that all these deeds were part of one and the same transaction; that the tenant received and parted with the seisin at the same time, and by the same act; and that the two conveyances were made to her for an ulterior purpose, which purpose was that the land might be conveyed to the demandant in consideration of the money advanced by him. She was the mere conduit through whom the title of Morrill and her husband passed. She never had an attachable interest in the premises, nor any such seisin as would give her husband any rights under R. S., c. 103, § 17. Nor could he have any rights under his deed.

That the seisin may be instantaneous merely, "it makes no difference whether the transaction consists of one conveyance or of several, or whether they are executed between two parties only, or more. If they all constitute one transaction, done at the same time,

it matters not how complicated it is.  If he is but an instrument or conduit to pass the title to another, it is unimportant how many simultaneous conveyances are made into and out of him."

*Haseltine* v. *Lesure*, 9 Allen, 24.  *King* v. *Stetson*, 11 Allen, 407.  *Chickering* v. *Lovejoy*, 13 Mass. 51.  *Webster* v. *Campbell*, 1 Allen, 313.

In any view we can take of the case the demandant takes title of Morrill, and if that mortgage is not foreclosed, that of the husband also, subject only to the paramount rights of his attaching creditors.                              *Judgment for demandant.*

APPLETON, C. J.; CUTTING, WALTON, DICKERSON, and BARROWS, JJ., concurred.