SAMUEL J. CHAPMAN *vs.* CAROLINE M. KELLOGG.

If a woman marries after making a negotiable promissory note, and the payee then sells
and indorses it to her husband, the note becomes a nullity; and it cannot be revived by
transfer by the husband back to the payee in pursuance of an agreement of the payee, at
the time he sold and indorsed it to the husband, to take it back in case of any difficulty
between the husband and wife.

CONTRACT on a promissory note made by the defendant April 6, 1866, under her maiden name of Caroline M. Fisk, for $200 payable on demand to the order of the plaintiff. Writ dated January 14, 1868. The answer admitted the making of the note, and alleged that the defendant afterwards married Nathaniel Kellogg, who was still living, and that he paid the note.

At the trial in the superior court, before *Vose*, J., there was evidence that the defendant married Nathaniel Kellogg in July 1866, and lived with him until January 1, 1867, when he left her, and that he was still living but never afterwards returned to her; that she never paid the note or furnished means to pay it; and that between October 24, 1866, and January 1, 1867, difficulty arose between her and her husband.

There was also evidence that on October 20, 1866, the plaintiff made demand on her to pay the note, and she replied that she had no means to do so and referred him to her husband; that on October 24, 1866, the plaintiff proposed to the defendant's husband that he should buy the note, and he agreed to do so " provided the plaintiff would indorse it, and take it back in case of any difficulty between him and his wife; " that the plaintiff agreed to these terms, and on receiving from the defendant's husband the amount due on the note delivered it to him indorsed by himself, and saw nothing more of it until September 1867, when the defendant's husband called on him to take it back, and he did so and paid the defendant's husband for it.

The defendant requested the iudge to rule that, " if the defendant's husband at the request of his wife paid to the plaintiff the amount due on the note, it was payment for the defendant and extinguished the debt, and the note could not be again put

in circulation as a valid note to any party having notice of these facts;" and also that, "if the note was paid by and transferred to the defendant's husband, it was a payment and extinguishment of the debt, and the note could not be again put in circulation as a valid note."

The judge declined so to rule, and instructed the jury as follows: "If the defendant's husband, at the request of his wife, paid to the plaintiff the amount due on the note, intending to extinguish the debt, that was payment of the note for the defendant, and extinguished the debt, and the note could not be again put in circulation as a valid note, to any party having notice of these facts. The purchase by and transfer of the note to the husband under an agreement with the plaintiff that the husband should hold the note and that the plaintiff should pay back the money and resume possession and control of the note, if desired by the husband, and a retransfer and sale of the note by the husband to the plaintiff in pursuance of this agreement, would not extinguish the debt and prevent the plaintiff from maintaining the present suit."

The jury found for the plaintiff, and the defendant alleged exceptions.

*C. A. Winchester*, for the defendant.

*H. W. Bosworth*, for the plaintiff, besides cases cited in the opinion, cited *Stearns* v. *Bullens*, 8 Allen, 581, and *Russ* v. *George*, 45 N. H. 467.

CHAPMAN, C. J. The note in suit was originally valid, having been given to the plaintiff by the defendant while she was sole. When she married Kellogg, it remained valid against her; but under our present statute her husband did not become liable to pay it. Gen. Sts. c. 108, § 8.

According to the plaintiff's testimony, he sold it to her husband, and indorsed it to him, and thus the husband acquired the legal as well as the equitable title to it. The agreement, that the plaintiff should take it back in case of any difficulty between the defendant and her husband, did not prevent the title from vesting absolutely in the husband, for the husband was under no obligation to return it, except at his own option.

The question presented is, whether this title in the husband operated to extinguish the contract. At common law, there can be no doubt that it would have done so. One of the reasons for the extinguishment would be, that the husband became liable by the marriage for its payment. The statute has taken this ground away, by releasing the husband from his liability for his wife's debts. But another ground was, that he could not maintain an action against his wife on a contract, because there could be no valid contract between them. This principle has not been changed by statute. A contract between husband and wife is still a nullity. *Lord* v. *Parker*, 3 Allen, 127. *Edwards* v. *Stevens*, Ib. 315. *Ingham* v. *White*, 4 Allen, 412, 415. He cannot even indorse a note to her. *Gay* v. *Kingsley*, 11 Allen, 345.

This note then, when it passed into the hands of the defendant's husband, he having the legal as well as equitable title to it, became a nullity. And, it having been once extinguished, he had no power to revive it against her by retransferring it to the plaintiff. The question here decided is different from that decided in *Bemis* v. *Call*, 10 Allen, 512.

*Exceptions sustained.*