FRANKLIN SAVINGS BANK *vs.* MARY J. GREENE.

A wife may acquire by purchase or gift from a third person the note of her husband, and may enforce payment thereof as such third person might have done.

Suit, if needful, may be brought by her in equity by her next friend, or at law by her statutory trustee, appointed under Pub. Stat. R. I. cap. 166, § 18.

Matters determined in a decree of reference to a master are not open before the master. They can be reconsidered on a petition for a rehearing, not on exceptions to the master's report.

A. made certain mortgages, and on paying them had them transferred to his wife's mother, the consideration of the transfer being A.'s indebtedness to his mother in law: she transferred them to A.'s wife as a gift. A. subsequently made another mortgage of the same property to a third person and afterwards died.

*Held*, that the mortgages held by A.'s widow were a valid lien on the mortgaged property, and took precedence of the subsequent mortgage made by A.

BILL IN EQUITY to cancel certain mortgages or to redeem. On exceptions to the master's report.

*February* 18, 1882. MATTESON, J. This is a bill to enjoin the sale of certain mortgaged real estate, and to compel the discharge of the mortgages, or, failing in that, to obtain permission to redeem the mortgaged estate.

The two mortgages to which the bill relates were executed and delivered by James Greene; one to Annie T. Greene and the other to Joseph M. Greene. They are dated the 8th day of February, 1861, and each purports to convey nine undivided fourteenths of certain real estate, situated in Pawtucket, and to secure the payment of the mortgagor's promissory note, of that date, for the sum of $375, payable to the mortgagee, or order, on demand, with interest semiannually. These notes were subsequently paid by the mortgagor, and on the 2d day of May, 1865, and the 29th day of September following, the guardian of the mortgagees, by direction of the mortgagor, assigned the mortgages respectively, together with the mortgage notes and debts, to Amy B. Arnold, the mother of the respondent, to whom also the mortgage notes

were made payable by indorsement.   The consideration for these assignments, as between the mortgagor and Mrs. Arnold, was his indebtedness to her for moneys, which she had previously loaned to him from time to time.   Mrs. Arnold assigned these mortgages, and the notes and debts secured thereby, to her daughter, the respondent; that given to Annie T. Greene, on the 2d day of May, 1865, and that given to Joseph M. Greene on the 30th day of September, 1865.   She also indorsed the mortgage notes in blank and delivered them to the respondent.   These assignments and transfers by Mrs. Arnold to her daughter were intended as. gifts of the mortgages and mortgage debts.   The respondent, at the times of these assignments and transfers, was the wife of the mortgagor, who was, and continued to be, the owner of the equity of redemption in the mortgaged property.   On the 22d day of April, 1875, the mortgagor executed and delivered to the complainant a third mortgage on the estate, to secure the payment of his promissory note for $14,000.   He died in November, 1878.   On the 5th day of June, 1879, the complainant, default having been made in the payment of the mortgage note held by it, caused the mortgaged estate to be sold under the power contained in its mortgage, and having given notice of its intention to bid at the sale, became the purchaser of the property.   Thereupon the respondent advertised the estate for sale under the power contained in the mortgages assigned to her as above set forth, and the complainant filed this bill.

On the hearing of the cause, at the October Term, 1879, the court entered a decree, adjudging the two mortgages held by the respondent to be valid mortgages, and referring the cause to a master to take an account of the sums due thereon.

At the hearing before the master, the complainant's counsel requested the master to rule that the transfer of the legal title to the mortgage notes to the wife of the maker extinguished the mortgage debt.   This request was refused by the master, on the ground that the language of the decree, " that the mortgages mentioned and described in the plaintiff's bill are valid mortgages," included not only the validity of the mortgage deeds as conveyances properly executed and recorded, but also the validity of the notes described therein and intended to be secured thereby,

and, therefore, this matter had been already passed upon by the court. The master's construction of the decree was correct. The point was taken at the hearing of the cause, and was considered and overruled by the court. Unless the court had found that the mortgage debts were not extinguished, it would have been a useless proceeding to send the cause to a master to take the account. The matter was not open at the hearing before the master, and the master properly refused to make the ruling. The exception is, therefore, overruled.

If the complainant deemed the decision of the court erroneous, his proper course of proceeding was by petition for a rehearing.

As there seems to have been in the mind of counsel some misapprehension in relation to the decision of the court upon the point in question, it may, perhaps, be well to state the reasons for that decision.

It is doubtless true that at common law the transfer of a note of the husband to the wife extinguished the debt. This rule was based on the idea of the legal unity of husband and wife, which disabled them from entering into contracts with each other, or from enforcing such contracts by suit. The enactment, however, of statutes, recognizing the separate existence of a married woman by securing her property to her exclusive use, as against the husband and his creditors, and by conferring upon her, to a greater or less extent, the power of entering into contracts respecting her property and of disposing of it independently of her husband, has changed the common law in this respect, where such statutes prevail. They two are no longer one, and *he* that one. Under the provisions of Rev. Stat. R. I. cap. 136, in force at the dates of the assignments of the mortgages and transfers of the mortgage notes to the respondent, it was held in *Steadman* v. *Wilbur et ux.* 7 R. I. 481, 485, 486, that a married woman might purchase the property of her husband, paying for it out of her separate estate, might loan him money from her separate estate, and had the same right to expect and receive security and payment as any other creditor. The same principle was recognized in *Hodges* v. *Hodges et al.* 9 R. I. 32, 35, 36, in which it was held, that if husband and wife treat each other as lender and borrower, the contract of loan carries with it its usual incident of interest, and

that the wife is entitled to be credited, in an account between her and her husband, with the proceeds of the sale of her property, although they have been applied to defray family expenses with her consent and approval. These decisions are broad enough to cover the present case, for if the wife can loan money directly to her husband and be entitled to repayment as a creditor, certainly there can be no reason why she may not acquire by purchase, or gift from a third person, the note or other obligation of the husband, given for his indebtedness, or why she should not be entitled to payment therefor, out of the estate of the husband, precisely as such third person would have been. Should it become necessary for her to enforce payment by suit, she might do so by her next friend in equity, or through a trustee of her estate appointed by the court on her petition under Pub. Stat. R. I. cap. 166, § 18.

Similar decisions have been made in other states. Thus in *Randall* v. *Lunt*, 51 Me. 246, 252, it was held that a husband, though insolvent, might convey real estate to his wife in payment of a note which he had given her for money loaned, if there was no intent to defraud or delay creditors ; and in *Bean* v. *Boothby*, 57 Me. 295, 302, it was held that the assignment to the wife of a mortgage given by the husband did not discharge the mortgage, and that the mortgage, and the debt secured by it, were property, which she had the same right to purchase and hold as any other. So also in *Power* v. *Lester*, 23 N. Y. 527–536, it was held that the marriage of a female mortgagee with the mortgagor, after the act for the protection of the rights of married women, Laws N. Y. 1848, cap. 200, did not extinguish her right of action upon the mortgage.

The complainant has cited, in support of its claim, *Chapman* v. *Kellogg*, 102 Mass. 246, 248, and *Abbott* v. *Winchester*, 105 Mass. 115. These decisions rest upon the ground that, in Massachusetts, the common law doctrine has not been changed by statute, and that, therefore, there can be no valid contract between husband and wife, but that such a contract is a nullity. In a later case, however, *Model Lodging House Association* v. *Boston*, 114 Mass. 133, 139, 140, it was held that the assignment of a mortgage to the wife of the mortgagor did not extinguish the debt

and mortgage, nor prevent their transfer by the wife, although the relation of husband and wife might prevent her from suing him upon the note. The court in this case adverts to the fact that the husband had conveyed the mortgaged premises, prior to the assignment of the mortgage to the wife, and had no interest in the property while the mortgage was held by the wife. They do not tell us, however, nor do we perceive, how this fact could have affected the decision ; for the debt continued to be the debt of the husband, although he had parted with his interest in the property.

*Exceptions overruled. Decree accordingly.*

*W. W. Blodgett*, for complainant.

*B. N. & S. S. Lapham*, for respondent.