CHARLES JONES et ux. *vs.* WALTER IRVINE'S Executors.

This was an action brought by parties claiming as residuary legatees, against the executors of the security upon an executor's bond ; and the undertaking of the surety being entirely conditional, of course, until there has been default on the part of the principal obligor, no action can be maintained against the surety ; and in case of a residuary legatee, the law charges the executor to pay all the balance of the estate which may remain in his hands, after payment of all debts of the testator, of all specific legacies, and all necessary and proper charges incurred in executing the trust of the will ; and to ascertain this balance, the constitution of the state has provided that "the probate court shall have full jurisdiction in all matters testamentary and of administration," &c.; and this court has repeatedly *held*, that the jurisdiction is exclusive in the probate court, and an executor or administrator is not liable to a suit in chancery for an account, but that the power to compel the same belongs to the probate court, which has exclusive jurisdiction for that purpose.

Until the final settlement of an executor's account, the residuary balance cannot be known or ascertained, and no other tribunal than the probate court can make that settlement. *Held*, that no action can be maintained against a surety on an executor's bond by a residuary legatee, until the probate court fixes and establishes the amount of such residuum, and decrees a payment ; and to authorize a suit at law upon the bond without such final account in the probate court, would be to withdraw from that jurisdiction a power conferred exclusively upon that court by the constitution in regard to matters testamentary, and to intrust to a jury in a court of law the settlement of an executor's account, which would not be rendered of probable attainment.

It has been held in England, that a neglect or a refusal of the administrator to distribute the surplus or residue of the effects of an estate among the next of kin according to the statute of distributions, is not a breach of condition of the bond without a previous decree or sentence of the court, because, until the decree of the court for distribution, the administrator could not know who were entitled as the next of kin to demand the property ; neither is the administrator liable at the suit of a creditor until a judgment against him *de bonis testatoris*, because the law will not compel him to pay a debt until the party claiming it has established its validity in a court of law, and the liability of the executor to pay it out of the effects of the deceased.

It is a settled rule, that if M. the executor of McC. were living, it would be necessary to apply to the probate court and obtain a decree for payment of

the residuary balance upon a final account of the executor, because until such final account is exhibited, and the balance ascertained by the probate court, the amount for which the executor was in default could not be known, and as no other court would have had jurisdiction to settle the account, no action could be brought until a decree made by it. *Phipps* v. *Judge of Probate*, &c., 5 How. 68, cited and confirmed by the court.

It would seem to follow from the statute, Hutch. Code 670, sec. 11, that as M., the executor, would have been liable in his lifetime to a suit in the probate court for an account and payment, by the residuary legatees of McC.'s estate, no rule would have prevented such legatees from bringing a similar suit against the personal representatives of M. and obtaining a decree for the balance due them in the hands of M., and if no person had administered on the estate of M., then a court of chancery would perhaps have taken jurisdiction. *Held*, there is no good reason shown why an exception should be made in this case, in requiring a previous settlement of the account of M. as executor, and a decree in favor of the plaintiff for the balance, before suit can be brought against the surety on his bond, and the declaration not being sufficient, the demurrer was properly sustained by the court below.

In error from the circuit court of Adams county; Hon Stanhope Posey, judge.

The opinion of the court contains a sufficient statement of the facts of the case.

*Ralph North*, for plaintiffs in error.

*Lewis Sanders, Jr.*, on the same side.

*McMurran*, for the defendant in error, filed an elaborate brief, reviewing at length the case.

Mr. Justice YERGER delivered the opinion of the court.

The plaintiffs in error, claiming to be the residuary legatees of the last will and testament of George McCrakin, deceased, brought this suit against the defendants, who are executors, &c. of Walter Irvine, deceased, for the purpose of charging the estate of Irvine, on account of an alleged liability incurred by Irvine, as surety on the bonds of Thomas Munce, who qualified as the executor, &c. of McCrakin. The bond was executed in 1819. The breach alleged is, that Munce wasted

and converted to his own use a large sum of money, which remained in his hands after the payment of debts and specific legacies, and refused to account for or to pay the same to the plaintiffs, as residuary legatees, although the same was specially demanded. It alleges, that Munce died insolvent on the 11th day of May, 1830, and that he never in his lifetime, nor has any one since, rendered or settled any final account of the acts of Munce, as executor, &c., nor has any one paid to plaintiffs, as residuary legatee, the balance in the hands of Munce, due to them.

To this declaration a demurrer was filed, which was sustained by the court below. Eleven causes of demurrer were assigned, but we do not deem it necessary to notice any but the ninth and tenth, which are substantially the same, and are to the effect, that the plaintiffs never obtained any order or decree of the probate court against Munce, in his lifetime, or his personal representatives since his death, directing the payment of the residuum of McCrakin's estate to them, nor had plaintiffs obtained any judgment against Munce in his lifetime, or his personal representatives since his death, for a *devastavit* in the administration of McCrakin's estate.

It is admitted by the counsel for the plaintiffs in error, that it is a rule of the common law, that no action for a *devastavit* could be maintained against an executor to charge him *de bonis propriis*, until judgment against him *de bonis testatoris*, and a return of *nulla bona* on that judgment; but it is insisted, that this judgment *de bonis testatoris*, and the return of *nulla bona*, were only designed for the purposes of evidence, absolutely necessary and indispensable, if in the reach of the party, but which the court might dispense with, if impossible to be obtained, as it was an action against the executor of an executor who died before a judgment could be rendered against him *de bonis testatoris*. In actions of this kind, it is alleged that the precedent judgment *de bonis testatoris,* and a return of *nulla bona,* were dispensed with, and evidence *aliunde* of the *devastavit* admitted. 1 Saund. R. 219 *d*, 219 *e*, 219 *f*. Giving full force to the rule and to the exception as contended for by the plaintiffs in error, let us see whether this

action can be sustained on the averments contained in the declaration.

It must be remembered, that it is an action by parties claiming as residuary legatees, against the executors of a surety, for the purpose of charging his estate with an alleged *devastavit*, without any judgment or decree ever having been rendered against the principal obligor, or his personal representatives, for the alleged *residuum*.

The first point to be ascertained in an inquiry of this kind, is the period of time at which the liability of the surety upon this bond becomes fixed. The undertaking upon the part of the surety being entirely conditional, of course, until there has been default on the part of the principal obligor, no action can be maintained against the surety. Upon looking to the condition of the bond, we find that it contains the following stipulations, to wit: That the executor shall make and return an inventory of the goods and chattels, &c., that he shall well and truly administer the same according to law, make a just and true account of his actings and doings when required by the probate court, and pay and deliver all legacies contained and specified in the will, as far as the goods and chattels, &c. will extend, according to the value thereof, and as the law shall charge them. Now, in the case of a residuary legacy, to what extent does the law charge an executor? To pay to the residuary legatee all the balance of the estate, which may remain in his hands after payment of all the debts of the testator, of all specific legacies, and all necessary and proper charges incurred in executing the trusts of the will. In what tribunal, and in what manner can this balance be ascertained? The constitution has provided, that the "probate court shall have full jurisdiction in all matters testamentary and of administration," &c.; and this court has repeatedly held, that this jurisdiction is exclusive in the probate court, and that an executor or administrator is not liable to a suit in chancery for an account, but that the power to compel the same belongs to the probate court, which has ample and exclusive jurisdiction for that purpose.

Until the final settlement of an executor's account, of course

the residuary balance cannot be known or ascertained, and from the foregoing decisions, it is clear that no other tribunal than the probate court can make that settlement. The conclusion seems irresistible from these premises, that no action can be maintained against a surety on the executor's bond, by a residuary legatee, until the probate court fixes and establishes the amount of such *residuum*, and decreed its payment. To authorize a suit at law upon the bond, without such final account in the probate court, would be to withdraw from that jurisdiction a power conferred exclusively upon it by the constitution, in regard to matters testamentary, and to intrust to a jury in a court of law, the complicated and difficult settlement of an executor's account, the settlement of which, in a proper and satisfactory manner, neither the time usually allotted to jury trials, nor the circumstances ordinarily attending them, nor the previous habits and occupations of the jurors, would render of probable attainment.

In England it has been held, that a neglect or refusal of the administrator to distribute the surplus or residue of the effects of the intestate among the next of kin, according to the statute of distributions, is not a breach of the condition of the bond, without the previous decree or sentence of the court. 1 Will. on Ex'rs, 334, 335; 8 Barn. & Cress. 151. Why is this rule so established? Because, until the decree of the court for distribution, the administrator could not know who were entitled as next of kin to demand the property. Neither is an administrator liable, at the suit of a creditor, until a judgment against him *de bonis testatoris*. Why? Because the law will not compel him to pay a debt, until the party claiming it has established its validity in a court of law, and the liability of the executor to pay it out of the effects of the deceased.

In the case of *Phipps* v. *Judge of Probate*, 5 How. R. 68, this court said, "The receipt of assets, and the wasting of them, are conditions precedent to the individual liability of an administrator. If he were living, and refused to pay or distribute according to the decree of the probate court, the plaintiff's remedy would be on his bond. Of course his estate cannot be made liable, except in the same way. The object

31*

is to make his individual estate liable for the distributive share. His death does not change the mode of doing so, for it can only be done in one way, and that mode is the same, whether he be dead or living." The counsel for the plaintiff in error admit, that if Munce, the executor of McCrakin, were living, it would be necessary to apply to the probate court, and obtain a decree for payment of the residuary balance upon a final account by the executor. Why? Because until such final account was exhibited, and the balance ascertained by the probate court, the amount for which the executor was in default could not be known, and as no other court would have had jurisdiction to settle the account, no action could be brought till a decree made by it.

Has the death of Munce made any difference in the law in this particular? According to the opinion of the court, in the case cited from 5 How. R. 68, it has not.

The statute of this state has provided, that executors and administrators shall be liable to be sued in any court of law or equity, as the case may require, in any action which might have been maintained against the deceased. Hutch. Code, 670, sec. 111. It would seem to follow very clearly, from this provision, that inasmuch as Munce would have been liable in his lifetime to a suit in the probate court, for an account and payment by the residuary legatee of McCrakin's estate, no rule of law would have prevented such legatee from bringing a similar suit against the personal representatives of Munce, and attaining a decree for any balance due him in the hands of Munce. If no person had administered upon the estate of Munce, then, as was held in the case of *McRae* v. *Walker*, 4 How. R. 455, a court of chancery would probably have taken jurisdiction, and, in a suit against the surety, might have taken the account and granted relief. See also 6 Rand. R. 49; 5 Ib. 51.

After this examination of the cases cited by counsel for the plaintiff in error, and of the reasons given by them, why an exception should be made in this case, in requiring a previous settlement of the accounts of Munce, as executor, and a decree in favor of the plaintiffs for the balance, before suit against

the surety on his bond, we have come to the conclusion, that the declaration does not show sufficient cause for such exception. We think the ninth and tenth causes of demurrer well assigned, and that there was no error in the circuit court in sustaining the same. We accordingly affirm the judgment of that court.