### MATTIE JARNAGIN v. GODFREY FRANK, ADMR.

1. ESTATES OF DECEASED PERSONS. *Final settlement.*

   An executor's final account is a suit instituted by him for a settlement and discharge from liability on the basis of the claim made in such account.

2. SAME. *Executor's death. Duty of his administrator.*

   If such executor dies pending the proceeding, it is his administrator's duty to obtain the decree of approval and allowance of his final account as executor.

3. SAME. *Loss of account. How supplied.*

   Loss of the account so filed should be supplied by the administrator; but an order compelling the contesting legatee to do so is a harmless error if inquiry is permitted into the account.

4. SAME. *Final account. Contest. Scope of inquiry.*

   The scope of such inquiry should be the ascertainment of the true balance due by the executor; but the error of limiting the inquiry to the amount of indebtedness shown by the executor's account as filed is no ground for reversal, if the result by either process is the same.

APPEAL AND CROSS APPEAL from the Chancery Court of Bolivar County.

Hon. W. G. PHELPS, Chancellor.

Godfrey Frank's intestate, Isaac Hudson, qualified as executor of Harriet L. Porter's will in January, 1860. The estate, which was in debt, consisted of slaves. In December, 1863, an annual account was filed, showing the payment of all the debts, and that the executor had expended five hundred dollars

and received nothing.  Subsequently, on petition of Mattie Jarnagin, Harriet L. Porter's sole heir and legatee, he filed his final account, but by agreement between them action was suspended until either party should notify the other.  The executor died in January, 1879, and in May following Mattie Jarnagin filed this petition alleging the loss of the final account, and asking *scire facias* for Godfrey Frank to show cause why the proceeding should not be revived and the account supplied by him.  He answered, denying personal knowledge, but claimed that nothing was ever received by Hudson, the executor, that the final account showed that he owed nothing to the estate, and that on notice to the appellant it was approved and allowed.  The court then ordered Mattie Jarnagin, over her objection, to supply the lost account, and restricted her to reproducing the account as filed or proving the balance that was admitted by the executor to be due from him.  She produced evidence, however, generally as to proper debits and credits which the account should have contained.  But the Chancellor, at the final hearing, excluded this proof and decreed only for the balance which he held was proved to have been admitted.  From this decree both parties appealed.

*Nugent & McWillie*, and *Charles Scott*, for the appellant and cross appellee.

1.  The suit was not discontinued, but was pending when the petition was filed.  The executor had never been discharged, and was still amenable to the jurisdiction of the court; the office ceases only with the *final execution* of the trust.  *Davis* v. *Cheves*, 32 Miss. 317; *Denson* v. *Denson*, 33 Miss. 560; *Henderson* v. *Winchester*, 31 Miss. 290; *Pollock* v. *Buie*, 43 Miss. 140.  If he die before the allowance of his final account, his personal representative must represent him.  *Jones* v. *Irvine*, 23 Miss. 361; *Steen* v. *Steen*, 25 Miss. 513, 527.  And even after settlement he would still be amenable to the jurisdiction of the court for assets and property not accounted for.  *Brown* v. *Thomas*, 26 Miss. 335.  Until final settlement be made in the manner provided by law, the Statute of Limitations can never begin to run against a devisee, legatee, or distributee.  *Wren* v. *Gayden*, 1 How. 365; *Roberts* v. *Roberts*, 34 Miss. 322; *Murdock* v. *Hughes*, 7 S. & M. 219.

2. If, then, the court still has jurisdiction of the case and of the executor, the matter must be proceeded with and decided, so as to do justice to the appellant and the estate of her deceased trustee, notwithstanding the inherent difficulties of the case. If a final account was ever filed, it would be the duty of the court to have it restored as far as practicable, to hear proofs pro and con, and, after full investigation, to correct if necessary and approve it. This much is due to the trustee: to accept his account as tendered for the purpose of the investigation, and to listen to and determine all objections against it. The account, if ever filed, was never examined and allowed, and is hence open to objection. It is not, however, the special duty of the appellant to supply this lost paper; it was Hudson's duty to exhibit and file the final account; and it is the duty of his administrator to supply the loss which cannot be imputed to the devisee under Mrs. Porter's will. How the court could cast this whole burden upon the appellant we are at a loss to determine. The petitioner asked for an order upon the administrator to supply the "lost record," and the court ordered her to do it! It would certainly seem to be better to call on the personal representative to do this than upon his adversary who did not come into possession of Hudson's papers or his estate.

3. It was wrong to confine Mattie Jarnagin to the face of the executor's account. That was a mere pleading on his part, without force as evidence in his favor. If necessary the court should have decreed so as to work out justice unfettered by the idea of a final account. In any event all proper items of debit or credit were open to proof whether upon the executor's account or not, and the only effect of his showing in evidence was as an admission against himself.

*Charles Scott* and *W. L. Nugent*, also filed additional briefs, and the latter argued orally.

*Simrall & Magruder* and *F. A. Montgomery*, for the appellee and cross appellant.

1. Under the interlocutory order made in this case the petitioner was allowed to do one of two things: Either to reproduce the papers belonging to the estate and then file exceptions to the account, or to prove the balance admitted to be due on

the final account. She has admitted her inability to do the former, and has failed to do the latter. The case might well then rest upon this order, and the failure of the petitioner to comply with it, were it not for the wide range taken by counsel, and the fact that the whole case, upon the extraneous testimony, comes before the court.

2. In the case of *Taylor* v. *Benham*, 5 How. (U. S.) 233, as in the case before the court, the Statute of Limitations was set up, or urged as a defence, but the court having some doubt whether it could technically apply, looked further to the circumstances of laches and long neglect by the complainants, independent of the statute, and reached the conclusion that the laches of the complainants operated in equity very conclusively against going back of an executor's account formally and finally settled, after the lapse of twenty years and the death of the parties concerned. A very strong case of fraud, or of clear accident or mistake, must be proved in such settlement to justify such a measure. The court says, in the case of *Lupton* v. *Janney*, 13 Peters, 381, that when it is sought to impeach executors' or administrator's accounts, it should be by suit brought *recenti facto*, and at furthest within the period prescribed by the Statute of Limitations for an action at law upon matters of account, or else to assign some ground of exception or disability *within the analogy* of the statute to justify or excuse the delay. The alleged agreement between Jarnagin and Hudson, if true, would afford no such ground. Angell on Limitations, § 174, *et seq.* Upon these authorities, the petitioner having waited so long, and until the papers and accounts are lost, cannot now ask the aid of a court of equity; and, even if Hudson would have, or did owe anything on his final settlement, the claim is now barred by the Statute of Limitations.

3. If the whole evidence is weighed, it appears that the petitioner has no claim, for the only thing tending to charge the executor is incompetent parol evidence, and a deposition in a foreign contest between strangers to this suit. The result is the same whether the court acts upon all the evidence or the proof under the order. It is clear that the petitioner has been unable to comply with either the spirit or letter of this order, liberally as it was conceived and made, and she is there-

fore entitled to no relief. Nor, when the case is fully considered, can it be either a matter of complaint or regret that she has failed to make out a case against Hudson's estate. Innocent though she may be of any fraudulent purpose in this suit, yet it cannot be denied that in the absence of express authority to reopen a case like this (and there are none, but some against it) the precedent would be one fraught with the gravest dangers to the estates of deceased persons, especially those who had the confidence of their friends and to whom the care and disposition of their estates might be left.

*H. F. Simrall* and *F. A. Montgomery* also made separate written arguments, and the former argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

The final account presented by Isaac Hudson was a suit instituted by him for a settlement and discharge from liability as executor on the basis of the claim made by him in said account. On his death it was still pending, by virtue of the agreement of the parties, and it was the duty of Hudson's administrator to obtain the decree of approval and allowance of his final account as executor of Harriet L. Porter's will. It would have been proper to require Hudson's administrator to settle the accounts of his intestate as executor. The order to produce a substitute for the account filed by Isaac Hudson, although founded on the erroneous view that the duty to do it devolved on Mattie Jarnagin, rather than Hudson's administrator, was harmless, since inquiry was permitted into the state of the account. If the order had been that Hudson's administrator should produce and file a copy of the account, the result could not have been different from that attained by the course pursued. He would have answered the rule by saying he knew nothing of the matter or he would have presented what he regarded as the real state of the account, whereby no indebtedness from his intestate would appear to exist, and Mattie Jarnagin would have been driven to her exceptions to the account thus presented, and the issue would thus have been made as to whether it was "just and true."

We dissent from the view of the Chancellor that the final account of Hudson, executor, was *prima facie* correct, and

that the balance shown by it to be due from him was to be the subject of investigation, to which the evidence was to be confined. The final account of Hudson was his statement of his claim as to his administration. It was not evidence in his favor. It carried no presumption of its correctness. It was his showing of the administration by him as executor. The Chancellor was wrong in limiting his investigation to the amount of Hudson's indebtedness, as shown by the account he had presented when called on for a final settlement. The true subject of inquiry is, What is the state of the accounts of Hudson as executor of Harriet L. Porter's will? This can be answered only by evidence of all proper debits and credits in his administration of the estate. We have made an investigation of the state of the accounts of Hudson, executor, as shown by all the evidence, as should have been done in the court below ; and our conclusion is to affirm the decree, both on the appeal and cross appeal, and it is so ordered.

*Decree accordingly.*