WILSON P. MOULTON, Administrator of Charles H. West, *vs.* GEORGE L. SMITH, Administrator of Phebe A. West.

A husband administering the estate of his deceased wife may retain from it funeral and probate expenses paid by him, and compensation for his services as administrator.

*Buxton* v. *Barrett*, 14 R. I. 40, affirmed.

When a husband so administering died before settling his account with the probate court:

*Held*, that his administrator could, by bill in equity against the wife's administrator, establish a lien on the wife's estate for such expenses and compensation.

*Held*, further, that neither the delay of the administering husband for more than two years to present his accounts to the probate court, nor the omission of his administrator to settle the husband's accounts in the probate court before beginning equity proceedings to enforce the lien, should bar the suit.

*Query*, whether courts of probate in Rhode Island have statutory power to settle the account of a deceased administrator when presented by his administrator.

The husband's administrator claimed a lien on the wife's estate for the amount of a physician's bill paid, and of a stonecutter's bill for a gravestone unpaid.

*Held*, that the physician's bill was the personal debt of the husband, and that the husband's administrator had nothing to do with the unpaid stonecutter's bill. Hence the lien is refused.

An inexpensive gravestone, when the estate of the deceased is solvent, should be allowed in the funeral expenses. Pub. Stat. R. I. cap. 189, § 4, regards something more pretentious.

BILL IN EQUITY to establish a lien.

*February* 4, 1888. DURFEE, C. J. Phebe A., wife of Charles H. West, died February 25, 1884, leaving a will by which she gave her whole estate, real and personal, to her husband for life,

and after him to her brother and nieces. The will was duly proved, and West was appointed administrator with the will annexed. He filed an inventory, from which it appears that the personal estate left by his wife amounted to $1,021.52, and consisted of bank stock valued at $535, a savings bank deposit of $100, and $193.20 in cash, besides household furniture. He paid $248.60 for funeral expenses, and $20.45 for probate charges. He also paid $95 to the physician who attended his wife in her last sickness. He employed a stonecutter to set up a marker at her grave and to cut an inscription for her on his monument, who has rendered a bill of $42, which has not been paid. The bills rendered all make the charges, not against West individually, but against the estate. West died February 2, 1887, before rendering any account as administrator to the probate court, though, according to the evidence, he intended to do so. The complainant was appointed administrator on his estate. The defendant was appointed administrator *de bonis non* on his wife's estate.

The object of this suit is to have the court declare a lien on the stock and deposit for the amounts aforesaid, in favor of the complainant as administrator on West's estate, and compensation for West's services as administrator on his wife's estate, and to have so much of said stock and deposit as is necessary sold for the payment thereof.

It is provided in Pub. Stat. R. I. cap. 189, § 1, that " the estate of every deceased person shall be chargeable with the expenses of administering the same, and the funeral charges of the deceased, and the payment of his just debts, and the same shall be paid by the executor or administrator of the estate out of the same, so far as the same shall be sufficient therefor." In *Buxton* v. *Barrett*, 14 R. I. 40, this court held that the estate of a woman dying under coverture is chargeable by force of this provision for her funeral expenses, and, if so, it is likewise chargeable for the expenses of administering it. We see no reason, therefore, why the sums paid by Charles H. West for funeral and probate expenses, together with a reasonable compensation for his services as administrator, should not be paid out of his wife's estate. That he was her husband is not, in our opinion, enough to relieve her estate ; for there is no reason why he should not have had the same right

as any other administrator with the will annexed, if he wished, and the fact that he had the charges made against the estate in the receipts which he took shows that he did wish it.

The physician's bill and the stonecutter's bill stand differently. There is nothing in the statute to make the estate chargeable with the physician's bill unless it can be regarded as a debt due from the testatrix, but we do not see how it can, since, being covert, she was unable to contract such a debt. We think it is to be regarded as the personal debt of her husband, and that, having paid it, he was not entitled to charge it to the estate. In regard to the stonecutter's bill, it seems to us that, where the estate is solvent, some simple and inexpensive stone or tablet to mark the grave is demanded by the decencies of Christian burial, and may be properly regarded as a part of the funeral expenses. The statute, Pub. Stat. R. I. cap. 189, § 4, which allows the erection of a suitable monument, "with the permission of the Court of Probate," in our opinion contemplates something more pretentious. But in this case, the bill never having been paid by West, his administrator has nothing to do with it.

The complainant, therefore, can only have relief, if at all, in the matter of funeral and probate charges and compensation. The defendant contends that he is not entitled to relief in equity, but that the proper course for him is to settle his intestate's account as administrator with the probate court, and then, if he makes out his claims, to prosecute his remedy at law. This view is supported by *Monroe* v. *Holmes*, 9 Allen, 244 ; 13 Allen, 109 ; *Prentice* v. *Dehon*, 10 Allen, 353 ; the remedy at law, according to these cases, being, after settlement in the probate court, a suit on the second administrator's bond. That an administrator of an administrator may settle his intestate's account with the probate court is maintained in several American cases on English authority. *Nowell* v. *Nowell*, 2 Me. 75 ; *Hamaker's Estate*, 5 Watts, 204 ; *Ray* v. *Doughty*, 4 Blackf. 115 ; *Jones et ux.* v. *Irvine's Executors*, 23 Miss. 361 ; *Steen* v. *Steen*, 25 Miss. 513 ; *Jarnigan* v. *Frank*, 59 Miss. 393. No exception can be taken to this doctrine when the terms in which probate jurisdiction is conferred are such as warrant its application ; but, of course, in this country the probate courts have only the jurisdiction given them by statute, and it

does not follow that they have a power simply because such a power is exercised by the English probate or ecclesiastical courts. In California it has been held that the courts of probate of that State have no power under the statute to settle the account of a deceased administrator presented by his administrator; *Wetzler* v. *Fitch*, 52 Cal. 638; *Bush* v. *Lindsey*, 44 Cal. 121; but that the representative of the deceased executor or administrator can be compelled to account in equity. *Chaquette* v. *Ortet*, 60 Cal. 594; *Curtis* v. *Curtis*, 65 Cal. 572. And, to a like effect, see *Ranney, in re*, 66 How. Pr. 291, in New York; and *Schenck* v. *Executors of Schenck*, 3 N. J. Law, 149, in New Jersey. In this State the jurisdiction is nowhere specifically granted, but, if it exist, exists under Pub. Stat. R. I. cap. 179, § 9, which provides that the probate courts "may and shall examine, allow, and settle the accounts of executors, administrators, and guardians by them appointed." The provision may, perhaps, be broad enough to authorize the settlement of the accounts of deceased executors, administrators, and guardians, when voluntarily presented by their representatives, though we know of no process by which their representatives could be compelled to account in the probate courts. But if this be so, does it follow that the complainant can have no relief in equity? The Massachusetts cases above cited are not conclusive on this point; for the equity jurisdiction in that State is limited, or was limited when those cases were decided, many controversies of equitable cognizance being thus excluded when there was another remedy either at common law or by statute. Pomeroy's Equity Juris. § 313. This court has full chancery jurisdiction conferred upon it by statute, and therefore a statute which simply affords a remedy in some other tribunal or tribunals does not oust it of its chancery jurisdiction to that extent, the remedy so afforded being concurrent or cumulative. And see Pomeroy's Equity Juris. §§ 279, 1153, n.

Chancery jurisdiction in matters of administration is very extensive. Mr. Pomeroy says that the jurisdiction, as administered in England, "includes everything pertaining to the settlement of decedents' estates, except the probate of wills and the issue of letters testamentary and of administration." Pomeroy's Equity Juris. § 77. Doubtless this statement is too broad for this coun-

try, where so much depends on statute; but in the case at bar, if the jurisdiction would exist independently of statute, we can see nothing in the statute, if the statute applies, to exclude it. In our view Mr. West, if he had lived, could have retained out of the estate so much as was necessary to reimburse him for the funeral and probate expenses paid by him, and to compensate him for his services as administrator. His right of retainer was equivalent to a special lien enforcible by himself for his own benefit. Having died, he cannot enforce it, and the question is whether equity will preserve the right and enforce it for the benefit of his estate. It seems to us that equity ought to interpose. *Actus Dei nemini nocet.* If, as is sometimes maintained, the principal ground of equitable relief in matters of administration is trust, the administrator being regarded as trustee of the assets in his hands, the circumstances here impart a special character to the trust, making it specially amenable to equitable enforcement. In *Smith* v. *Haskins' Heirs*, 7 J. J. Mar. 502, it was decided that an administrator who had paid debts of his intestate out of his own funds, expecting assets, and was removed before they came to hand, was entitled to maintain a suit in equity against the subsequent administrator who had received assets, and against the heirs for reimbursement. The case is fully in point, save that the case at bar is stronger in this, that the administrator had assets in hand with the right of retainer, which he was prevented from exercising by death, and that the charges paid by him, together with the claim for compensation, are preferred claims. See, also, *Hayes* v. *Cockrell*, 41 Ala. 75 ; *Barratt* v. *Wyatt*, 30 Beav. 442.

The defendant sets up by way of further defence that the complainant is not entitled to relief because his intestate allowed more than three years to pass without rendering an account, and because the complainant has not rendered any account for him, and consequently the charges made by his intestate have not been allowed by the probate court. The record shows that the said intestate did not survive his wife by quite three years, and though he was doubtless neglectful in not earlier settling his account, yet we do not think his *laches* were such as should bar this suit, though they may be a proper matter for consideration in the costs. Neither do we think it was necessary for the complainant to have

his intestate's account settled in the probate court before commencing suit here. If this court has jurisdiction in the matter, it has jurisdiction to settle the account as well as to enforce the payment of any balance which may be found in favor of the former administrator.

We will therefore sustain the bill, and, unless the account of Charles H. West can be otherwise adjusted, will send the cause to a master to hear and report thereon.

*Joseph C. Ely,* for complainant.

*Benjamin M. Bosworth,* for respondent.